NELS K. MOGAARD, Respondent, v. CITY OF GARRISON, a Municipal Corporation, and Joseph Fitzgerald, J. A. Reuter, Wm. Robinson, and W. H. Robinson, Appellants.

(182 N. W. 758.)

**Mandamus — Inferior tribunal cannot be compelled to decide fact questions in particular way, though it must take action.**

1. Where an inferior tribunal is vested with power to determine a question

of fact involving the taking and consideration of evidence, it cannot be compelled by mandamus to decide in a particular way, though it may be compelled to take action and to make some determination.

**Municipal corporations — territory sought to be excluded from city limits held not to be within statute authorizing exclusion.**

2. For reasons stated in the opinion it is *held* that a 35-acre tract sought to be excluded from the city of Garrison in McLean county is not within § 3969, Comp. Laws 1913, as amended by chapter 79, Laws 1919, which makes is the duty of the city council to exclude lands from the city, upon the petition in writing signed by not less than three fourths of the legal voters and by the owners of not less than three fourths, in value, of the property sought to be excluded, in all cases where the lands sought to be excluded are bordering upon the limits of the city, are wholly unplatted, and have no municipal sewers, water mains, pavements, sidewalks, or other city, town, or village improvements made or constructed therein.

Opinion filed April 18, 1921.

Appeal from the District Court of McLean County, *Nuessle,* J.

Defendants appeal from a judgment awarding a peremptory writ of mandamus to compel them as members of the city council of the city of Garrison to pass an ordinance disconnecting certain territory from that city.

Reversed and dismissed.

*E. T. Burke* and *J. E. Nelson,* for appellants.

"The writ of mandamus may be issued to any inferior tribunal to compel the performance of an act which the law specially enjoins as a duty resulting from office, trust, or station." Comp. Laws 1913, § 8457; 18 R. C. L. pp. 116–128.

*Norton & Kelsch,* for respondent.

"The legislature has the inherent authority to alter or change the boundaries of municipal corporations." Glaspell v. Jamestown, 11 N. D. 90; Johnson v. Clark, 21 N. D. 526; Const. § 130; Hunter v. Tracy (Minn.) 116 N. W. 924.

In proceedings taken under the statute, its provisions must be substantially followed, and the conditions therein specified must be fully complied with. Oehler v. Big Stone City (S. D.) 91 N. W. 450; Johnson v. Clark, supra; 28 Cyc. 202.

Writ of mandamus proper remedy. State v. Albright, 11 N. D. 29; Fuller v. University School Lands, 11 N. D. 212.

CHRISTIANSON, J. This is an appeal from a judgment of the district court of McLean county awarding a peremptory writ of mandamus to compel the defendants, Joseph Fitzgerald, J. A. Reuter, W. H. Robinson, and W. M. Robinson, as members of the city council of the city of Garrison, to pass an ordinance disconnecting or detaching certain territory from said city. The petition for the writ of mandamus was based on § 3969, Comp. Laws 1913, as amended by chapter 79, Laws 1919, which reads as follows: "On petition in writing signed by not less than three fourths of the legal voters and by the owners of not less than three fourths, in value, of the property in any territory within any incorporated city, town, or village, and being upon the border and within the limits thereof, the city council of the city or the board of trustees of the town or village, as the case may be, may disconnect and exclude such territory from such city, town, or village; provided that the provisions of this section shall only apply to lands not laid out into city, town, or village lots or blocks.

Provided, further, that when the property or lands described in such petition bordering upon and within the limits of any such incorporated city, town, or village are wholly unplatted, and no municipal sewers, water mains, pavements, sidewalks, or other city, town, or village improvements have been made or constructed therein, and this is made to appear upon the hearing upon such petition by the city council, commission, or board of trustees of the town or village, as the case may be, it shall be the duty of the city council, commission, or board of trustees to disconnect and exclude such territory from such city, town, or village." In the petition for the writ of mandamus, it is averred that the city of Garrison is a municipal corporation organized under the laws of this state; that the defendants, Joseph Fitzgerald, W. H. Robinson, W. M. Robinson, and J. C. Reuter, are the duly elected, qualified, and acting members of the city council of said city; that the plaintiff is the owner of the real property situated within the city of Garrison, which it is sought to have detached; that the petitioner and others caused a petition to be filed and notice to be given of the presentation thereof as required by law; that the city council set said matter for hearing; that a hearing was had, at which plaintiff was represented by counsel and testimony taken; that after such hearing, the city council adopted the following resolution:

"Whereas, the petition No. 1 of Nels Mogaard and others has been presented to the city council of Garrison, North Dakota, requesting that that certain strip of land 70 rods in width, lying upon and being situated along the north line of the southeast quarter of the southeast quarter of section 7, township 148, range 84, be excluded from within the limits of the said city, and,

"Whereas, it is within the personal knowledge of the members of the city council that the said tract of land is a part and portion of the southeast quarter of the southeast quarter of said section 7, upon which there is now located a certain portion of the main line of the sewer system of the city of Garrison, and,

"Whereas, the said tract of land does not border upon the outer limit of the said city, except 70 rods along the western line thereof, and,

"Whereas, by the exclusion of the said tract, it will leave the western boundary of the said city in an unnatural and inconvenient form and manner, and,

"Whereas, it has not been made to appear to the city council that three fourths of the legal voters have signed said petition, and,

"Whereas, it is apparent that the alleged voters residing upon the said tract are merely temporary residents thereon, and that the owner of said tract is not a legal voter, therefore it is,

"Resolved, That that said petition No. 1 be and the same is hereby denied."

It is further averred that the action of the city council was contrary to the facts established by the testimony at such hearing; that the grounds contained in the resolutions are insufficient as a matter of law to sustain the resolution; and that the action of the city council is illegal, oppressive, and arbitrary. In the return of the defendants it is averred, among other things, that the tract sought to be excluded is a part of the legal subdivision described as the S.E. ¼ of the S.E. ¼ of section 7, township 148, range 84; that the main outlet of the sewer system of the city of Garrison extends over and across the said 40-acre tract of land heretofore described; that said sewer system is a municipal improvement; that there is included within the territorial boundaries of the city of Garrison the S.W. ¼ and the W. ½ of the S.E. ¼, of section 8, and the E. ½ of S.E. ¼ of section 7, of said township and range; that by exclusion of the tract of land described in plaintiff's

application, there will be left within the limits of the city of Garrison a strip of land, 10 rods in width and 80 rods in length, extending in a westerly direction to the western boundary of said city, and that said strip of land will be connected to the city limits for 10 rods along the eastern line thereof, and that said extension of 10 rods is an unnatural, inconvenient, and irregular form for the city boundary. It is also averred that bonds have been issued by the city of Garrison with boundaries as now existing; that the sewer laid across the land is so constructed that it is convenient to make connection therewith, and hence affords sewer facilities to the owner or owners of said lands. The plaintiff demurred to the return on the ground that it did not state a defense to the application of the plaintiff and the alternative writ of mandamus. Upon the hearing in the district court, certain facts were stipulated, with the reservation that the parties did not either admit their materiality or waive the right of objection thereto.

The boundaries of the city of Garrison, and of the tract sought to be excluded, are shown on the following plat:

On this appeal appellants assert.

(1) That mandamus is not the proper remedy.

(2) That in any event the tract sought to be excluded is not one which the statute makes it obligatory upon the city council to exclude.

In our opinion, both contentions of the appellants must be sustained. Assuming, without deciding, that the determination of the

city council upon an application to exclude property is subject to judicial review, we do not believe that mandamus is the proper remedy to review the correctness of the action taken.

It will be noted that the statute makes it the duty of the city council to disconnect and exclude lands from the city only when the lands described in the petition: (1) Border upon the limits of the city; (2) are wholly unplatted; and (3) have no municipal sewers, water mains, pavements, sidewalks or other city improvements made or constructed therein. Hence, when an application is made to have certain territory excluded from the city, it becomes necessary for the city council to determine whether these facts exist. In making such determination the council exercises powers that are judicial in their nature. Glaspell v. Jamestown, 11 N. D. 86, 89, 88 N. W. 1023; Brenke v. Belle Plaine, 105 Minn. 84, 117 N. W. 158. "The writ of mandamus may be issued to any inferior tribunal to compel the performance of any act which the law specially enjoins as a duty resulting from office, trust, or station." Comp. Laws 1913, § 8458. Hence, when an inferior tribunal vested with jurisdiction to hear and determine a certain matter or proceeding refuses to act at all, it may be compelled by mandamus to act and make some determination. In other words, the inferior tribunal will be compelled to perform the duty which the law enjoins upon it, namely, hear and determine. But in such case, i. e., where the performance of an official duty or act involves the exercise of judgment or discretion, such judgment or discretion cannot be controlled by mandamus. In other words, while mandamus is regarded as the appropriate remedy to set the tribunal, empowered to exercise the judgment or discretion, in motion, it will not control its motion, or direct how or in whose favor such judgment or discretion shall be exercised. High, Extr. Leg. Rem. 2d ed. §§ 149 et seq.; 18 R. C. L. pp. 124 et seq. See also Ex parte Newman, 14 Wall. 152, 20 L. ed. 877; Oliver v. Wilson, 8 N. D. 590, 73 Am. St. Rep. 784, 80 N. W. 757; State ex rel. Wiles v. Albright, 11 N. D. 22, 88 N. W. 729. And where a tribunal vested with jurisdiction to hear and determine a certain matter exercises its jurisdiction by hearing and determining the matter, mandamus will not lie to review its proceedings or to revise its rulings. High, Extr. Leg. Rem. 2d ed. § 150; 18 R. C. L. pp. 124, 125. See also Ex parte Newman, supra. The propriety of the writ

of mandamus to review the action of a public body required by law to determine certain questions of fact was considered by the court of appeals of New York in People ex rel. Francis v. Troy, 78 N. Y. 33, 34 Am. Rep. 500. That case involved the designation of official newspapers for the city of Troy. The city charter required the common council to designate the newspapers (not to exceed four) having the largest circulation in the city, as official newspapers of the city. The common council having designated official newspapers, the relator, insisting that his newspaper was one of the four newspapers having the largest circulation in the city and entitled to be designated, applied for a writ of mandamus to compel the council to designate his newspaper as one of the official newspapers. In considering whether the action of the city council might be reviewed by mandamus, the court said: "The further question remains, whether, when the duty of selecting the persons to be employed is imposed by law upon a public body, and the question whether they possess the necessary qualifications is one of fact, to be determined by it, no particular mode of determining the fact being provided by law, and the public body has exercised this power, and made the selection, its action can be reviewed by mandamus, and it can be compelled by that proceeding to appoint particular persons, on their allegation that in fact they, and not the persons actually selected, possess the prescribed qualifications.

"The office of the writ of mandamus is in general to compel the performance of mere ministerial acts prescribed by law. It may also be addressed to subordinate judicial tribunals, to compel them to exercise their functions, but never to require them to decide in a particular manner. It is not, like a writ of error or appeal, a remedy for erroneous decisions. Judges of Oneida Common Pleas v. People, 18 Wend. 92-99, and cases cited. This principle applies to every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power or discretion, irrespective of the general character of the officer or body to which the writ is addressed. A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment. The character of the duty, and not that of the body or officer, determines how far performance of the duty may be enforced by mandamus. Where a subordinate body is vested with power to

determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it be made to appear what the decision ought to be. . . .

"The duty of selecting the newspapers having the largest circulation in the city being imposed upon the common council, the power to determine as matter of fact which papers have the largest circulation is necessarily vested in that body.

"The most that can be done by mandamus is to compel the common council to determine the question and designate the papers with reference to the statutory requirement; but I apprehend that it was not the province of the court to determine the question of fact in the first instance, and direct what particular paper or papers should be designated. . . . In the present case the evidence seems to have been quite satisfactory to the court that the relator's paper should be the one of those designated, but if it was within the power of the court in this case to order the common council how to decide, or to designate any particular paper, it would be equally in its power to do so in cases involving nicely balanced and difficult questions; and the duty of designating official papers for every city in the state could be transferred from the officers charged by law with that duty, to the courts of justice." 78 N. Y. 39–41, 34 Am. R. 504–506.

Nor do we believe that the tract sought to be excluded falls within the class which the statute says it is the duty of the city council to exclude and disconnect from the city upon being properly petitioned to so do. As already pointed out, the lawmakers have plainly said that it is only tracts of land which (1) border upon the limits of the city, (2) are wholly unplatted, and (3) have no municipal sewers, water mains, pavements, or other city improvements constructed therein, that it is the duty of a city council to exclude when petitioned to so do. In order to bring a tract within the provisions of the statute, all these elements must exist. In this case the plaintiff is the owner of a 50–acre tract which borders on the limits of the city for a distance of 80 rods running east and west, and for a similar distance running north and south. In other words, 160 rods of the boundary of the tract also constitute the boundary of the city. There is a city sewer constructed on this tract, within a distance of 10 rods from the south-

ern boundary line, running east and west across the entire tract. Hence, it is manifest that the entire tract does not fall within the provisions of the statute. But the plaintiff seeks to have excluded a 35-acre tract 70 rods of which borders upon the western border line of the city, and which leaves a tract 10 rods wide and 80 rods long lying immediately south of the tract sought to be excluded, still within the city limits, and it is contended that this 35-acre tract falls within the provisions of the statute. We are unable to agree with this contention. We do not believe that the lawmakers had any intention that anything like that sought to be done here might be accomplished under this law. We do not believe that it can be said that the tract sought to be excluded is one which borders upon the limits of the city, and has no municipal sewer constructed therein, within the meaning of the statute.

A somewhat similar question was considered by the supreme court of Colorado in Anaconda Min. Co. v. Anaconda, 33 Colo. 70, 80 Pac. 144. The statute there involved provided that a tract or contiguous tracts of land aggregating 20 or more acres in area embraced within the corporate limits of any city or town," and being upon or contiguous to the border thereof," should be excluded from the city or town, upon petition of the owner or owners of such lands, when certain facts were shown to exist. In the case cited it was sought to detach a tract a small portion of which touched the border, and the court held that it was not such a tract as might be detached under the statute. The court said: "The plat shows that the territory sought to be disconnected does not lie upon the border of the town, or contiguous thereto. The land is of irregular shape, and extends from the border several hundred feet to the platted portion of the town. A portion of the tract about 150 feet in width touches the border. The average width of the tract is about 600 feet; its average length about 1,500 feet. It comprises nearly all of two mining claims and a small portion of three others. The clear intent of the legislature was to permit persons owning property lying upon the border to disconnect from the town. The disconnection of property so lying upon the border would not be injurious. The limits of the town would be changed, but the town would not be divided. If 20 acres or more of land can be disconnected from a town where but a small portion lies upon the

border, it follows that a tract can be disconnected by the simple expedient of connecting the territory with the border by a narrow strip. This the legislature did not intend should be done." 33 Colo. 75.

The reasoning of the Colorado court is directly applicable here, and meets with our approval. The judgment appealed from is reversed, and the proceeding is ordered dismissed.

ROBINSON, Ch. J., and BIRDZELL, J., concur.

BRONSON, J. I concur upon grounds set forth in paragraph 2 of the syllabus.

GRACE, J. (dissenting). It would appear to be clear that the intention of chapter 79, Session Laws of 1919, which amends § 3969, Comp. Laws 1913, is to make it obligatory on the trustees of the village or the city council of the city, to disconnect and exclude farm lands from such city or village, on a proper petition presented complying with the requirements set forth in the statute.

The title to the act is "An Act to Amend and Re-enact § 3969, Comp. Laws 1913, Relating to Excluding Farms Lands from the Limits of Cities, Towns, or Villages." It shows the purpose of the statute. The body of the act provides that such land may be excluded if such land is unplatted and there are not on it certain municipal sewers, water mains, pavements, sidewalks, or other city, town, or village improvements.

It is clear, in this case, that the 35-acre tract is unplatted, and that there is not upon it any of such city improvements. It is clearly nothing but farm land. As we understand the matter, there is still a 5-acre tract of the 40-acre tract, upon which the sewer is located, and that is not sought to be excluded.

If the statute is to have any meaning or effect, it must be given a reasonable construction, and one which accords with common sense.

If, for instance, the whole tract involved were 2,000 acres of farm land, all of which lay within the corporate limits, and if a sewer were constructed which would segregate 1 acre of land from the 2,000 acres, under the theory of the majority opinion, the whole tract would have to be retained within the city limits, and could not be excluded

on the ground that it was farm land, and this, simply because the sewer cut off 1 acre of the whole tract, or was located on that acre.

There is just as much reason in saying that the remainder of the 2,000-acre tract should not be set off, for the reason that a sewer cuts off, or is on, 1 acre, or, in passing through the land, separates 1 acre from the mainland, as there is to say that the 35 acres shall not be set off where there is a 5-acre tract remaining, through which the sewer extends.

The point which we wish to make clear is that the statute must have a reasonable interpretation to mean anything. Any question relating to the sewer bonds mentioned in this case, perhaps, in any event, cannot be determined in any manner, except the bondholders are parties to the action. It may be further noticed that at the time these bonds were floated, § 3969, Comp. Laws 1913, had not been amended. At that time that statute made it discretionary with the council or trustees to exclude the land, and nothing in it was said in regard to sewers or municipal improvements. But that discretion would necessarily have to be exercised in a reasonable manner, and any proceeding of a board of trustees, etc., under said law, which was arbitrary, or was an abuse of discretion, could be remedied in a proper court. In other words, as the law then stood, a city council could exclude farm lands, even if there were sewers upon them, and it was while this law was in effect that the bonds in question were floated. So that, if the matter of the bonds were in issue in this case, which they are not, we do not think the issue with reference thereto would be material.

Of course anyone would know that the 35-acre tract can receive no benefit from the sewer. No one lives on it that is benefited thereby. It could be excluded, and there still remain a reasonable acreage, to wit, 5 acres, in which the sewer is located and which is not sought to be excluded.

A reasonable construction of this statute would operate to exclude the 35 acres, and retain the 5-acre tract within the city. To subject the whole tract of land for all the city improvements, which may be constructed in, upon, or about it, is virtually to confiscate the land by taxation, where that land is purely agricultural land, and can be used for nothing else.