GEORGE E. LEE, APPELLEE, V. CITY OF HARVARD, CLAY COUNTY, NEBRASKA, APPELLANT.

21 N. W. 2d 696

FILED FEBRUARY 15, 1946. No. 32009.

*S. W. Moger,* for appellant.

*D. B. Massie,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an equitable action to detach a tract of 9.28 acres from the City of Harvard. The city objected to its being detached, but the trial court found that the property received no special benefit from the city and that justice and equity required that it be detached, from which judgment the City of Harvard appealed.

The petition of George E. Lee sets out that he is the sole owner and in possession of a tract of land consisting of 9.28 acres, which was incorporated in the City of Harvard, but alleges that the land was not laid out in town lots or blocks, and is used exclusively for agricultural purposes, and there is no demand for its being used for municipal purposes; that plaintiff is the only resident of this tract of land; that his dwelling house is the only improvement upon the land; that plaintiff requested, but was denied, the use of city water; that there is inadequate fire protection furnished by the city; that there is no reasonable possibility that the city will ever extend to or require any of this land; and plaintiff prays that this land be detached from the defendant city.

The defendant filed answer, admitting that the plaintiff was the owner of the tract of land, which has been within the corporate limits of the City of Harvard for more than 35 years. Defendant alleges that the plaintiff purchased said real estate at a tax-sale foreclosure brought by the city for the sum of $330 on April 21, 1942; that at the time plaintiff purchased said real estate at tax sale there were unpaid taxes upon this tract of land for the year 1941, and the plaintiff has not yet paid said taxes for the year 1941, or any subsequent taxes levied against the real estate. Defendant denies that said property is used exclusively for

agricultural purposes, and alleges that the plaintiff has a highly improved residence and other buildings located on said land.

Defendant also alleges that said property is located at the extreme south part of the city, and is used exclusively as a residence at this time, and alleges that this property is bounded on the north, the east, and the west by property all within the corporate limits of the city. Defendant further alleges that along said property on the west is an asphalt road, and on the north is a graveled road, and on the south there is an oiled highway, and that the city has expended considerable sums of money to maintain said roads within its corporate limits and abutting said property, and that city funds were used in the payment of building intersections adjacent to the plaintiff's land, for which the plaintiff nor the former owners paid nothing.

Defendant city further alleges that the plaintiff's property, sought to.be set out of the city, is within four blocks of the business district, and if an extension of building residences in said city was required this would be the logical property for that purpose, and would be most desirable for building locations for future development of the city; in fact, there is no location adjacent to the city as desirable for future development and expansion.

Defendant denies that plaintiff was refused the use of city water, and, on the other hand, alleges that the city council has at all times been, and is now, willing to grant the plaintiff such rights, providing request is made by him in compliance with the water ordinances of said city. The city denies that there is inadequate fire protection for the improvements on this tract, and alleges that the city maintains an excellent fire department and fire-fighting apparatus, sufficient to care for and protect the plaintiff's property in case of fire.

The defendant further alleges that the city maintains a sewerage system for the benefit of its citizens, and which is available to the plaintiff, subject to the provisions of the city ordinances; that should said property be vacated it

would make the boundary lines of said city jagged and irregular; that the valuation of said property for tax purposes and the mill levy made thereon are extremely low in comparison with the benefits received. The city denies each and every other allegation of the petition, and alleges that the facts and allegations contained in the petition are not sufficient to constitute a cause of action, and asks that the petition be dismissed.

As heretofore stated, the trial court found for the plaintiff and ordered the property detached from the city. Motion for new trial being overruled, the city appealed.

The city sets out as errors relied upon for reversal that the decree and judgment of the district court are contrary to the law and the evidence, as well as contrary to justice and equity, and that the court should have found that the real estate was not subject to be detached.

The evidence discloses that this tract of 9.28 acres is a rectangular tract of land, located just north of the southern boundary of the city, and is uniform in width, but slightly longer in length than the four blocks of platted ground lying immediately north of it; that it is not irregular in any way in its four boundary lines except for a little tract of 100 by 50 feet where a filling station was located on the south edge of the property.

The map, exhibit No. 1, also shows that Clay Avenue, immediately west of this property, is a hard-surfaced street, which is curbed and guttered and is the main north and south street in the city, with a large number of places of business located on it; that three blocks north of this property the main line of the Burlington runs through the town, which must be crossed in getting to the main business section, beginning in the next block north of the tracks.

This tract of land has been within the city limits for over 35 years, and lying east of this property is the cemetery, which is owned by, and is within, the city, and there is a cement sidewalk leading to the cemetery, with which sidewalk the plaintiff could easily make a connection. The street on the east side of this tract of land is called Kearney

Avenue, which the city maintains as a graveled road leading to the cemetery. The evidence discloses that on the west side of this property and on Clay Avenue there are three street lights, one being directly in front of the plaintiff's house, which lights up his driveway; that there are two filling stations across the road from this tract of land, although they were not being operated when the evidence was taken.

The nearest fire plug to this property is one block north, and the city fire equipment includes 1,100 feet of good hose, with ample facilities to protect the plaintiff's property in case of fire. The only improvements on this tract are the house, barn, and chicken house. The plaintiff lives in this eight-room dwelling house, and has painted the same inside and out, and made other repairs. It is a modern house in that the plaintiff has his own water system, his own cesspool and furnace, and for electricity is connected with a public power district. While the property is not laid out in lots, there is a public sidewalk across the street west of the house.

Plaintiff testified that he had never made formal application, as required by the city ordinances, to be connected with the city water system, or with the city sewer, and the evidence was not definite as to the depth of the sewer line adjacent to his home.

The mayor testified that the population of Harvard by the 1940 census was 742, and that in a census recently taken the population had increased to 1,503 people. The assessed valuation of plaintiff's property is $1,680, of which $1,010 is for the buildings and $670 for the 9.28-acre tract.

Plaintiff on cross-examination admitted that he knew that the city had just added a new well to the waterworks system and had also recently extended the sewer line, and that he imagined that bonds for these improvements had been issued; that, while he was asking to have his property set out from the city for the purpose of having his taxes reduced, this was not his sole reason for making the application:

We find in a number of the decisions in cases of detachment of property from a city that it is said that the trial court made a personal inspection of the property, as well as of adjoining lands, and therefore that the finding of the trial court is entitled to great weight. Witham v. City of Lincoln, 125 Neb. 366, 250 N. W. 247; Keim v. Village of Bloomington, 119 Neb. 474, 229 N. W. 769; Chapin v. Village of College View, 88 Neb. 229, 129 N. W. 297. However, in the case at bar the record shows that the city requested the court to view the tract of land at the close of the evidence, and that the ruling on this request was: "THE COURT:—I have a very good idea, from the evidence, as to the situation out there; and I cannot see where it would serve any good purpose for me to take the time to view the property. The request will, therefore, be denied." Therefore, in the case at bar this court has the same evidence before it that the trial court had.

An examination of opinions in this class of cases shows that in one case, where the land was a quarter of a mile distant from the platted portion of the village, and was cut off therefrom by a creek, and was rural in character and low and unsuitable for any kind of village purposes, and was included exclusively to enable corporate authorities to levy and collect municipal taxes, it was declared to be unjust and inequitable to include it in the village. Village of Osmond v. Smathers, 62 Neb. 509, 87 N. W. 310. See, also, Barber v. Village of Franklin, 77 Neb. 91, 108 N. W. 146.

Where large tracts of land, of 60 acres and 150 acres, were used exclusively for farming, it was proper to detach them. Bisenius v. City of Randolph, 82 Neb. 520, 118 N. W. 127. Again, where it was unoccupied agricultural land, it was detached. MacGowan v. Village of Gibbon, 94 Neb. 772, 144 N. W. 808; Sole v. City of Geneva, 106 Neb. 879, 184 N. W. 900. In Joerger v. Bethany Heights, 97 Neb. 675, 151 N. W. 236, there were no village improvements, such as waterworks, electric lights, or other village conveniences, situated on or near either of the tracts detached.

This action is governed by section 17-414, R. S. 1943,

which provides that, if justice and equity require that a tract be disconnected from a city or village, a decree to that effect shall be entered.

In Haney v. Village of Hyannis, 97 Neb. 220, 149 N. W. 405, this court said: "The law upon the question involved is well settled in this state. In Village of Wakefield v. Utecht, 90 Neb. 252, we held: 'In an action to annex additional territory to a village, the burden is upon the village to establish by sufficient averments and evidence that the territory sought to be annexed will be benefited by the annexation, or that justice and equity require that such territory be annexed.' By analogy the holding must necessarily be that, in an action to disconnect territory, the burden is upon the petitioner to establish by sufficient averments and evidence that justice and equity require that such territory be disconnected."

In Englewood v. Jones, 71 Colo. 181, 204 P. 607, where the city had maintained a street adjoining the lands in question, doing considerable work in scraping and graveling at city expense, and including street lights thereon, it was held that the owners were precluded from having the land detached. See exhaustive annotations on detachment of land from cities in 62 A. L. R. 1029 and 117 A. L. R. 267.

Now, in the case at bar, public utilities are located adjacent to this property and capable of being used for its benefit. The plaintiff has improved streets on four sides of this property, one of them being with gutters, and has street lights in the street near his property. By these and many other benefits, including that of adequate fire protection, his property has entirely lost its character as farm land, and is and has been for many years distinctively part of this city.

In our opinion, there is such a community of interest between the tract sought to be detached and the other parts of the city that justice and equity require that this tract should not be set apart from the city.

For the reasons herein set out, the action of the trial court is set aside and the petition is dismissed for want of equity.

REVERSED AND DISMISSED.