Chester A. Swanson et al., appellees, v. City of
Fairfield, Clay County, Nebraska, appellant.
53 N. W. 2d 90

Filed May 2, 1952. No. 33131.

*D. B. Massie* and *John A. Bottorf,* for appellant.

*S. W. Moger,* for appellees.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Simmons, C. J.

This is an action in equity to detach property from the corporate limits of defendant city. Issues were made and trial was had resulting in a decree detaching the property. After motion for a new trial was overruled, defendant appealed. We reverse the judgment of the district court and dismiss the action.

The cause is for trial de novo here. Kuebler v. City of Kearney, 151 Neb. 698, 39 N. W. 2d 415; Davidson v. City of Ravenna, 153 Neb. 652, 45 N. W. 2d 741; Runyan v. Village of Ong, 154 Neb. 127, 47 N. W. 2d 97.

For convenience we will refer to land within corporate limits as urban land, to land without such limits as rural land, and to the defendant as the city.

The land sought to be detached lies in the east area of the city. The boundaries of the city in that area and the land sought to be detached are shown on the following plat.

# FAIRFIELD

The boundaries of the city are shown by heavy lines. The land sought to be detached is the hatched area. The streets and areas shown on the above plat are those appearing on the plat of the city. Each block as platted contains 12 lots with a 20-foot alley. The land was so platted in 1884. It appears that land to the northeast of this area was originally platted and was within the city but has since been detached from its corporate limits.

The land in blocks 17, 18, and 19 is enclosed by a fence, so that the platted streets and alleys between and

in those blocks are not in fact open to public use. Plaintiffs' home, barn, and outbuildings are on the northwest corner of block 17. This area is used largely for pasture. Likewise, blocks 26, 27, and 28, and lot 1 are in one enclosure, contain no buildings, and are used for farm crops.

Seventh and Eight Streets and Maple Street are open, used streets. Sixth Street is open on the south side of blocks 23, 24, and 25.

There are residences to the north, west, south, and east, averaging one or more to the block. The business district of the city is some ten blocks to the west and south of plaintiffs' property. All the land in the area is comparatively level and usable for residential purposes.

Plaintiffs acquired this land four and five years before this action was commenced. Originally they purchased all of lot 1, but during the pendency of this action they sold the west portion of lot 1 for residential purposes. They amended their petition so as to exclude the land so sold from this action.

Plaintiffs alleged in their petition that the land sought to be detached was used for agricultural purposes exclusively, and that there was no demand for the land or any part of it for urban purposes. The evidence sustains their contention. Plaintiffs further allege that there is no reasonable possibility that the city will ever extend to or use the property by actual residence. The evidence is that there has been one new home built in the area here involved in recent years and several houses have been remodeled. There is no evidence of immediate probable city growth.

Plaintiffs allege that the property is not benefited by city water and that there is not adequate fire protection. The evidence is that there are a water main, a fire hydrant, and a city street light one block west of plaintiffs' home; that plaintiffs can secure water service by compliance with ordinance provisions, the same as other properties; and that the city is equipped, able, and ready

to furnish adequate fire protection to plaintiffs' property.

The evidence is that the city maintains round-the-clock police protection for its inhabitants and that on the only occasion plaintiffs called for such protection, they received it.

Plaintiffs' evidence is that the streets are not maintained. There is evidence that work is being and has been done on Seventh and Eighth Streets and that Fourth Street is a well-maintained and used highway. Plaintiffs asked for and received gravel on Maple Street west of their home. The evidence is that the streets in this area do not receive the maintenance that streets closer to the business section receive.

Plaintiffs, relying on section 17-414, R. S. Supp., 1951, contend that justice and equity require that the land be detached. That statute provides that territory within and adjacent to the corporate limits may be disconnected if justice and equity require.

In the determination of what constitutes justice and equity, the facts in each case, under well-recognized principles of law, must to a very large extent determine that question. In re Chief Consolidated Mining Co., 71 Utah 430, 266 P. 1044.

We are asked to apply the unity-of-interest rule last stated in Runyan v. Village of Ong, *supra.*

We are here presented with a paucity of facts regarding the city. We are not able to relate the facts shown as to this land to the city's general situation in such a way under that rule as to find that justice and equity require that the land be disconnected from the city.

Under the facts here there is a controlling reason why this land should not be detached. If we treat the land sought to be detached as separate tracts consisting of blocks or half blocks, as the city would have us do, then it is clear that only a small part thereof is adjacent to the corporate limits. Plaintiffs would have us treat it as one body of land separated into three tracts by

existing streets which are subject to vacation under the provisions of other statutes. So treated, it is a body of land adjacent to the corporate limits only on a part of one side and extending into the city, and which, if detached, would leave it bordered by urban property on the north, west, south, and over half of its east borders. Stated otherwise, it would leave the city with an area to the south in an "L" shape generally one to three blocks wide and seven blocks long—a boot of urban land projecting into rural land. Obviously it would enhance the difficulties of city administration, street maintenance, and the maintenance of other city services, and would lessen the availability of contiguous areas for urban use.

In Anaconda Mining Co. v. Town of Anaconda, 33 Colo. 70, 80 P. 144, the statute related to land "being upon or contiguous to the border" of a city. Petition was made to disconnect an irregular tract generally 600 feet wide and 1,500 feet long, 150 feet of which touched the border of the city. The court held that such land did not lie upon the border or contiguous thereto. It reasoned that "The clear intent of the legislature was to permit persons owning property lying upon the border to disconnect from the town. The disconnection of property so lying upon the border would not be injurious; the limits of the town would be changed, but the town would not be divided. If twenty acres or more of land can be disconnected from a town where but a small portion lies upon the border, it follows that a tract can be disconnected by the simple expedient of connecting the territory with the border by a narrow strip. This the legislature did not intend should be done." The Supreme Court of North Dakota followed this decision in Mogaard v. City of Garrison, 47 N. D. 468, 182 N. W. 758, where a 35-acre tract was sought to be excluded leaving it rural land surrounded on three sides by urban land. The statute referred to land "upon the border and within the limits" of the city.

In Lincoln Addition Improv. Co. v. Lenhart, 50 N. D. 25, 195 N. W. 14, the court was presented with a petition for detachment involving a tract similar to the tract here involved. The court followed the Mogaard case and held: "In a manner, the exclusion of such territory will serve, in many ways, to make the land south of the excluded territory and within the limits of the city noncontiguous for jurisdictional and transportation purposes."

In City of Colton v. Parks, 71 S. D. 401, 24 N. W. 2d 919, that court was presented with a petition to detach bordering land from the city that was agricultural in character and without improvements, aside from fencing. The court denied detachment for the reasons, also summarized in 2 McQuillin, Municipal Corporations (3d ed.), section 7.27, page 336, that detachment of land may be denied where the exclusion of the land would destroy the symmetry of the municipality, enhance the difficulties of administration and planning improvements, and lessen the availability of isolated areas for urban uses. In Ball v. Village of Parma, 49 Idaho 40, 286 P. 24, the court defined the elements entering into the symmetry of a municipality.

We conclude that justice and equity do not require that the land involved be detached.

In Lee v. City of Harvard, 146 Neb. 807, 21 N. W. 2d 696, we were presented with a somewhat similar factual situation where the land sought to be detached was bounded on three sides by urban property. The contention was there advanced that the property was not adjacent to the corporate limits of the city. The opinion did not discuss or turn on that question. The result was in accord with our decision here.

The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.