STATE of North Dakota ex rel. PUB-
LIC SERVICE COMMISSION,
Respondent,

v.

NORTHERN PACIFIC RAILWAY COM-
PANY, a corporation, Appellant,

and

A. L. Ford, Sr., Dale Langford and Lester
W. Miller, on behalf of themselves and all
others similarly situated, Interveners.

No. 7509.

Supreme Court of North Dakota.

Feb. 17, 1956.

Conmy & Conmy, Fargo, for appellant.

R. W. Wheeler, Asst. Atty. Gen., for respondent.

Gallagher & Paul, Mandan, for interveners.

SATHRE, Judge.

This is a mandamus proceeding brought by the Public Service Commission of the State of North Dakota against the Northern Pacific Railway Company, a foreign corporation.

The facts in the case are substantially as follows:

On November 15, 1954 a representative of the Northern Pacific Railway Company made a courtesy call at the office of the Public Service Commission. He advised the Commission that the Railway Company intended to discontinue mixed trains Nos. 175 and 176 over its Linton Mandan Branch Line and substitute tri-weekly service. He made it clear to the Commission that the railway company was proceeding on its own initiative in making the change and was not asking the approval of the Commission or submitting to its jurisdiction, as it was felt that this was not required or necessary. On November 23, 1954 the Railway Company wrote a letter to the Public Service Commission inclosing a copy of a public notice which had been posted by the railway company in the depots at McKenzie, Hazelton, Temvik and Linton concerning the change in the Northern Pacific Linton Branch train service which was to be effective November 29, 1954. The notice enclosed is as follows:

"Public Notice

"Effective November 29, 1954, Northern Pacific mixed trains 175 and 176, between Mandan and Linton, daily except Sunday, will be discontinued.

"Effective same date, the Northern Pacific Railway will inaugurate local freight service leaving Jamestown, North Dakota, on Monday, Wednesday and Friday and will leave Linton on Tuesday, Thursday and Saturday. Milk, cream and express shipments will be handled in this service and make connections with main line passenger trains at McKenzie.

"F. W. McCabe,
"Superintendent."

On November 27, 1954 the Public Service Commission issued an ex parte order directed to the Northern Pacific Railway Company requiring it to continue the service of trains Nos. 175 and 176 between Mandan and Linton, North Dakota, which order is as follows:

"It Appearing That on the 24th day of November, 1954, the Northern Pacific Railway Company notified this Commission of its intention to discontinue its mixed trains number 175 and 176 between Mandan, North Dakota, and Linton, North Dakota, and

"It Appearing That this Commission has not received the required 30 days notice of such change in service; Now, Therefore, pursuant to resolution of the Public Service Commission of the State of North Dakota, duly adopted the 27th day of November, 1954, it is Ordered, that the Northern Pacific Railway Company, be and are hereby required to continue the present service provided by its Trains Nos. 175 and 176, between Mandan and Linton, until further order of this Commission. Dated at Bismarck, North Dakota, this 27th day of November, 1954.

"By Order of the Public Service Commission.
"Elmer Olson, Secretary"

On December 4, 1954 the Railway Company wrote to the Public Service Commission a letter in which it stated that it declined to comply with the Commission's order of November 27, 1954 for the reason that the said order was made ex parte without giving the railway company an opportunity to be heard and that the said order was wholly without jurisdiction, void and of no effect. The letter is as follows:

"Dec. 4, 1954

"Subject: Linton Branch Train Service

"Public Service Commission
"State Capitol
"Bismarck, North Dakota.

"Gentlemen:

"On November 15, 1954, we made a courtesy call at your office to advise you that the Northern Pacific Railway Company intended to discontinue mixed Trains 175 and 176 over its Linton Branch Line and substitute tri-weekly service. We made it clear to you that we were proceeding on our own initiative in making the change and not asking your approval or submitting to your jurisdiction as we did not feel this was required or necessary. Your Commerce Counsel agreed with us that no thirty day notice was required because of Section 49-0505.

"On November 23, 1954, we sent you a copy of the Notice of this change of service that had been posted in our depots.

"On November 27, 1954, you made an order requiring the Northern Pacific Railway Company to continue the present service provided by Trains Nos. 175 and 176 until further order of the Commission. This order was made ex parte and without giving us any opportunity to be heard and was wholly without jurisdiction, void and of no effect, in our opinion. We must, therefore, respectfully decline to be bound by it.

"Our Operating and Accounting officials estimate that the proposed change will save between $80,000 and $100,000 in operating expenses per year. This large saving could be used to improve the Northern Pacific train service on mainline in North Dakota and between other points in the State and elsewhere where the public will use the trains and be benefited by the service. Our figures show that on the Linton Branch for several years there has been very little use by the public of the passenger trains. On the average, less than one passenger per day has used the train between Mandan and Linton or between intermediate points, and certainly such little use by the public does not justify the operation of the trains.

"The Northern Pacific Railway Company has always cooperated in every way with the Public Service Commission and has forever striven to be a good citizen of the State of North Dakota. We desire to continue to cooperate with the Commission and to obey all of its lawful orders, but, feeling as we do, that the order in the instant matter is wholly without authority in law, the Railway Company feels that it is not being uncooperative in advising your Honorable Body that the order will be disregarded and mixed trains 175 and 176 between Mandan and Linton will be discontinued effective December 6, 1954. On the same date the Railway Company will inaugurate local freight service leaving Jamestown, North Dakota, on Monday, Wednesday and Friday and will leave Linton on Tuesday, Thursday and Saturday. Milk, cream and express shipments will be handled in this service and make connections with mainline passenger trains at McKenzie. The mail has been taken from the trains and is now being handled by Star Route and the citizens of the towns affected are actually receiving better mail service than was being afforded by the passenger trains.

"Yours truly,
"Northern Pacific Railway Company
"By Conmy & Conmy,
Its Attorneys."

Thereafter the Public Service Commission made an application to the District Court, 6th Judicial District, Morton County, North Dakota for an alternative writ of mandamus requiring the Northern Pacific Railway Company to show cause on the 17th day of December 1954 at 10 o'clock

A.M. at Mandan, North Dakota, why it should not comply with the order of the Commission issued on November 27, 1954. Thereupon the said District Court, the Hon. Mark H. Amundson, Judge, issued an alternative writ of mandamus which is as follows:

"To Northern Pacific Railway Company:

"On the 7th day of December, 1954, application was made to this Court by the North Dakota Public Service Commission charging the above-named railroad corporation with non-compliance and disregard of a lawful order of said Commission made and entered in Docket No. 5270 and dated November 27, 1954 requiring said railroad to continue to operate its Trains Nos. 175 and 176 between Mandan and Linton, North Dakota, daily except Sunday until further order of said Commission.

"Please take notice that it is the order of this Court, based upon said verified application, that the Northern Pacific Railway Company either comply with said order of the Public Service Commission or show cause before this Court why it should not comply with said order, in the District Court Rooms of the Morton County Court House in Mandan, North Dakota, at 10 o'clock A.M., M.S.T., or as soon thereafter as counsel may be heard, on the 17th day of December, 1954.

"Dated at Mandan, North Dakota, this 7th day of December, 1954.

"By the Court:
"Mark H. Amundson, Judge."

In its return to the alternative writ of mandamus the railway company admitted its corporate existence, that prior to December 4, 1954 it had operated trains Nos. 175 and 176 between Linton and Mandan, and that on December 6, 1954, it discontinued the operation of said trains over the Linton branch, and that in its letter of December 4, 1954 to the Public Service Commission, the Commission was advised of the intention of the railway company to substitute other service on the said Linton branch.

The return then alleges that said order of the Commission made on November 27, 1954, was made ex parte upon the oral request of A. L. Ford, Sr., State Legislative representative of the Brotherhood of Railway Trainmen, without the filing of a statement or complaint and without the issuance of a notice of hearing, and without serving of any notice, upon the railway company and without furnishing the railway company with any written specification of the issues to be considered, or giving it opportunity to be heard and to present evidence as required by the statutes of the State of North Dakota, and that said order was wholly illegal and void and made without jurisdiction or power.

A hearing was had upon said alternative writ of mandamus on the 17th day of December, 1954, and after said hearing and on the 18th day of January, 1955 the District Court made and entered its peremptory writ of mandamus commanding the railroad company to obey and comply with the order of the Public Service Commission dated November 27, 1954.

Judgment was entered on the 18th day of January 1955 in accordance with the peremptory writ of mandamus commanding the railway company to obey the order of the Public Service Commission made on the 27th day of November, 1954. The railway company appealed to the supreme court from the said judgment.

On January 5, 1955 the district court, after hearing, made its order that A. L. Ford, Sr., Dale Langford, and Lester W. Miller, on behalf of themselves and others similarly situated, be permitted to intervene as petitioners. The said A. L. Ford is a resident of the State of North Dakota and in the employ of the Minneapolis, St. Paul & Sault Ste. Marie Railroad Co., doing business in the State of North Dakota, and is a member of the Brotherhood of Railway Trainmen, and is a legislative representative of said Brotherhood. Dale Langford is a resident of the State of North Dakota,

an employee of the Minneapolis, St. Paul & Sault Ste. Marie Railroad Co., and a member of the Brotherhood of Locomotive Firemen and Enginemen and legislative representative for said Brotherhood. Lester Miller is a resident of the state of North Dakota, an employee of the Northern Pacific Railway Co., and a member of the Order of Railway Conductors and Brakemen and legislative representative of said order.

Upon application of the appellant Railway Company and after hearing, the district court issued an order on February 3, 1955, requiring the Railway Company to furnish a statutory cost bond in the sum of $250 and a supersedeas bond in the sum of $5,000 and providing that upon furnishing such bonds a stay of all proceedings be had pending determination of the appeal and for a period of twenty days after the remittitur is filed in the district court. The bonds were furnished as provided by the order.

The interveners appealed to the supreme court from the order of the district court permitting the appellant railway company to furnish a supersedeas bond and granting a stay of proceedings, except the entry of judgment, until final determination of the case.

It is contended by the Public Service Commission that the defendant railway company had failed to give 30 days notice before discontinuing trains Nos. 175 and 176 as required by Section 49–0505, NDRC 1943. Said section reads as follows:

"No change shall be made by any public utility in any tariffs, rates, joint rates, fares, tolls, schedules, classifications, or service which have been filed and published by any public utility, except after thirty days' notice to the commission. Such notice shall state plainly the changes proposed. The commission for a good cause shown, may allow changes upon less than the notice herein specified, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."

In the instant case the Commission was advised by the Railway Company that it was not seeking the approval or authority of the Commission to discontinue trains Nos. 175 and 176, but that it proceeded solely on its own initiative. The Commission then proceeded to issue its ex parte order of November 27, 1954. Thereafter the Railway Company notified the Commission that it declined to obey such order upon the grounds that the same was illegal and void. The Commission then brought the instant mandamus proceeding and obtained the peremptory order requiring the Railway Company to comply with the order issued on November 27, 1954. The Railway Company contends that the order of the Commission of November 27, 1954 is void for the reason that there was no compliance with any of the provisions of Sections 28–3205 and 28–3208, 1953 Supp. to NDRC 1943 which are as follows:

Section 28–3205:

"1. In all proceedings brought before an administrative agency having jurisdiction of the subject matter, the petitioner, or the administrative agency when acting upon its own initiative, shall prepare and file a clear and concise statement or complaint with the agency having jurisdiction of said proceeding. Said complaint shall contain a concise statement of the claims or charges upon which the petitioner relies, and the relief sought. Upon the filing of such complaint, the appropriate administrative agency shall issue a notice for hearing, which shall fix the time and place for trial thereof upon its merits. Said notice shall inform the party proceeded against that unless an answer to such complaint is served upon the petitioner and agency giving such notice at least three days before the time specified for hearing therein that the complaint will be deemed admitted, and that the agency will enter such order as the facts and law may warrant. A true copy of the complaint and notice of hearing shall be served upon the respondent personally, or by

registered mail, as the agency may direct, at least twenty days before the time specified for hearing thereof unless the service of such complaint or notice of hearing is waived, in writing, by the party proceeded against, or unless the parties agree upon a definite time and place for hearing thereof with the consent of the agency having jurisdiction. Provided, however, that in case of an emergency the agency, in its discretion, may notice a proceeding for hearing upon the merits upon less than twenty days' notice. Every party to such proceeding shall be given a reasonable time within which to prepare for such hearing, which may be extended by the agency upon good cause being shown by the applicant therefor."

Section 28–3208:

"Whenever an administrative agency, pursuant to authority conferred upon it by law, shall institute an investigation upon its own motion or without the filing of a specified complaint, or shall hold any hearing or make any independent investigation upon the claim or request of any person, no decision shall be made by the agency until all parties in interest shall have been furnished with a written specification of the issues which are to be considered and determined, nor until an opportunity shall have been afforded to such parties to present evidence and to be heard upon the precise issues so specified. Provided, however, that the commissioners of the workmen's compensation bureau may make awards without the giving of the notice herein provided for."

■ These statutes were considered by this court in the case of Petition of Village Board of Wheatland, 77 N.D. 194, 42 N.W. 2d 321, 331, 335. In that case we held that the powers of the Public Service Commission must be exercised in accordance with the statutes granting such powers. We quote from the opinion:

"The constitution of this state provides that 'the powers and duties' of the Public Service Commissioners 'shall be prescribed by law.' N.D. Const. Sec. 83. The statutes of this state prescribe the manner in which such powers are to be exercised. The powers conferred upon the commissioners 'must be exercised in accordance with the statute bestowing such powers and they can act only in the mode prescribed by the statute. * * They cannot rightfully dispense with any of the essential forms of proceedings which the legislature has prescribed for the purpose of investing them with power to act. A commission may not assert the general power given it and at the same time disregard the essential conditions imposed upon its exercise.' 42 Am.Juris., Public Administrative Law, Sec. 68, p. 379. While there are differences in the origin and functions of courts and administrative agencies which preclude 'the wholesale transportation to administrative proceedings of the rules of procedure, trial, and review which have evolved from the history and experience of courts,' and as a general rule such proceedings are not restricted by the same technical and formal rules which govern trials before a court, nevertheless, 'in the exercise of judicial or quasi-judicial powers, the elementary and fundamental principles of judicial inquiry should be observed.' 42 Am.Juris., p. 446; Pigeon's Case, 216 Mass. 51, 102 N.E. 932, Ann.Cas. 1915A, 737."

■ Assuming, but not deciding, that the action of the Railway Company in discontinuing trains Nos. 175 and 176 was without authority of law, nevertheless, under the provisions of Sections 28–3205 and 28–3208, supra, the Commission was without jurisdiction to make any decision or order until the Railway Company had been furnished with written specifications of any issues to be considered and determined, and until it had been afforded an opportunity to present evidence upon the issues involved.

The Public Service Commission contends that under the provisions of Section 49–0202, NDRC 1943 it is granted power to require public utilities to conform to the laws of the State. Said Section 49–0202 provides that the Commission shall have power:

"1. To investigate all methods and practices of public utilities or other persons, subject to the provisions of this title;

"2. To require them to conform to the laws of this state and to all rules, regulations, and orders of the commission not contrary to law; * * *

"4. To compel obedience to its lawful orders by proceedings of mandamus or injunction or other proper proceedings, in the name of the state, in any court having jurisdiction of the parties or of the subject matter; and

"5. To shorten the period for which notice shall be given prior to hearing, when good cause exists for such action. Such notice, however, shall be reasonable in view of the nature, scope, and importance of the hearing."

■ It will be noticed that under the provision of Subsection 4 quoted above the Commission has power to compel obedience to its lawful orders by proceedings of mandamus or injunction or other proper proceedings in the name of the State, in any court having jurisdiction of the parties or the subject matter. However, in a proceeding by injunction or mandamus to compel obedience to any order, the Commission must comply with the statutory requirements of procedure. In the instant case it is conceded that the order issued by the Commission on November 27, 1954 was an ex parte order and that it was issued without the service of any notice upon the Railway Company and without specifying any complaint; nor did it require the Railway Company to show cause why it should not continue the operation of trains Nos. 175 and 176. Further, under the statute quoted if the matter was of great importance the Commission could fix a hear-

ing upon short notice because the Commission has the power to shorten the period for which notice shall be given prior to any hearing when good cause exists for such action.

It is clearly established by the record that the Public Service Commission in issuing its order of November 27, 1954, was attempting to assert and exercise a general power given it without complying with jurisdictional requirements imposed by statute for such exercise. We conclude that the order of the Commission of November 27, 1954 was a nullity and that the judgment entered in the mandamus proceedings to enforce said order was erroneous. It follows also that the attempted appeal of the interveners was without any legal effect.

The judgment of the district court is reversed and the case remanded with directions to vacate its judgment entered herein.

BURKE, C. J., and MORRIS, JOHNSON and GRIMSON, JJ., concur.