[File No. 7107]

R. R. HARDING, Respondent, v. CITY OF DICKINSON, Stark County, North Dakota, Edgar T. Agnew, President, Board of City Commissioners, and D. D. Mars, City Auditor, Appellants.

(33 NW2d 626)

Opinion filed August 3, 1948.

*J. W. Sturgeon,* City Attorney, and *R. V. Boulger,* Assistant City Attorney, for appellants.

*Crawford & Reichert* and *L. R. Baid,* for respondent.

74

*Nels G. Johnson*, Attorney General, *P. O. Sathre* and *C. E. Brace*, Assistant Attorneys General, as amici curiae.

GRIMSON, District Judge. The plaintiff is a citizen and taxpayer of the City of Dickinson, North Dakota, and brings this action on behalf of himself and all other citizens and taxpayers of the City of Dickinson similarly situated to enjoin the City of Dickinson and its Board of City Commissioners from entering into a proposed contract with the United States for a supply of water for the City. The trial court granted the prayer of

the plaintiff and enjoined the City from entering into said proposed contract. The defendants appeal from the judgment.

From the stipulated facts it appears that the City of Dickinson owns and operates a water supply system and distribution facilities but does not have available an adequate supply of water for city purposes; that negotiations were had with the United States of America through the Bureau of Reclamation of the Department of the Interior to obtain an adequate water supply from the proposed Dickinson Dam on the Heart River located about two miles from the City of Dickinson; that these negotiations culminated in a proposed contract which was then embodied in an ordinance enacted by the Board of City Commissioners of the City of Dickinson and approved by a majority of those voting at an election held for that purpose.

Four objections are raised to the completion of this proposed contract. First, that the City has no power to enter into the contract with the United States. Second, that the proposed contract makes the obligations thereunder a general obligation of the City of Dickinson, in contravention of the statute. Third, that there has been no appropriation for the payment of water to be furnished for the first year. Fourth, that the execution of the contract would entail large obligations for watermains, ditches, and other installations for which no plans, specifications and estimates have been prepared or provided and no provision made for the payment of the same.

It is conceded that the United States has authority to enter into such a contract. It is further conceded that the City of Dickinson has only such authority as is given it by statute or necessarily implied therefrom. Lang v. Cavalier, 59 ND 75, 84, 228 NW 819. Section 40–3316 ND Rev Code 1943, is claimed as the authority for the City to enter into the contract. The question raised is whether or not the City acted within the authority there granted.

That statute reads as follows:

"Municipality May Purchase Water for Distribution. Any city or village owning a system for the distribution of water for fire protection and other public purposes and for selling

water to its inhabitants and industries, but for which the water supply is unsuitable or inadequate, may contract to purchase water at wholesale for such purposes from any person, firm, or public or private corporation able and willing to furnish the same, upon such terms and during such period, not exceeding forty years, as the city or village governing body shall deem appropriate. Any such contract shall be authorized by an ordinance submitted to the voters for approval by a majority of those voting on the proposition before it takes effect. In and by such ordinance and contract, the city or village may bind itself:

1. To establish and maintain rates and charges for supplying water by it to its inhabitants and industries, either according to a prescribed schedule agreed upon or sufficient to produce net stated amounts for specified periods during the life of the contract, or both, and to appropriate and use the same for payments to become due under the contract, and, if the contract so provides, the city or village shall be obligated to pay for such water solely out of such net revenues;

2. To pay, at an agreed rate or rates, for all water taken by the city under such contract and not resold by it; and

3. To do and perform any other acts or things which, in the discretion of the governing body, are deemed reasonable and appropriate for the procurement of such water on the most efficient and economical basis.

If any payments under any contract are to be made solely out of new revenues, the contract may fix and prescribe the method or basis on which net revenues are to be computed."

To determine whether the proposed contract comes within the statute its terms must be analyzed and construed.

In construing a statute the ordinary sense in which words are used (§ 1–0202 ND Rev Code 1943) and the context in which they are placed (§ 1–0203 ND Rev Code 1943) and the background for its enactment as far as that can be ascertained from the whole act must be considered. The main object sought in the construction of a statute is to ascertain and give effect to

the intention of the lawmakers as expressed therein. Murie v. Cavalier County, 68 ND 242, 278 NW 243; State v. Rother, 56 ND 875, 219 NW 574.

"All statutes must be construed if possible, so as to give them validity, force and effect and carry out the will of the legislator. In doing this respect must always be had to the language of the statute, the plain and obvious meaning of the words used and . . . their objects and purposes." People v. Sweetser, 1 Dak 308, 46 NW 452.

"There is always difficulty in extending the operation of words beyond their plain import; but the cardinal rule of construction is, that where any doubt exists, the intent of the legislature, if it can be plainly perceived, ought to be pursued. It is also a rule that the whole law is to be taken together, and one part expounded by any other which may indicate the meaning annexed by the legislature itself to ambiguous phrases." Chief Justice Marshall in Postmaster Gen. v. Early, 12 Wheat (US) 136, 6 L ed 577.

This § 40–3316, supra, was first enacted as Ch. 184 of the Session Laws of 1943. The Court will take judicial notice that during the decade between 1930 and 1940 North Dakota suffered a period of drouth and the maintaining of an adequate water supply for some cities and villages became a serious problem. The Water Conservation Law was enacted. The State Water Commission was established. Chapter 184, SL 1943, was introduced by Senator Harry O'Brien of Walsh County by request of the State Water Commission. The title of the act is: "An Act authorizing and relating to contracts by certain cities and villages for obtaining a supply of water for public and domestic uses." The wording of the whole act indicates that the legislative intent was to give the authority to the cities to contract for a water supply with any entity "able and willing to furnish the same" and on the most "efficient and economical basis."

The first objection argued is that the United States is not one of the parties with which the City is authorized to con-

tract under the above section. Specifically the question is whether the United States is included in the term "public corporation".

In the case of Ableman v. Booth, 21 How (US) 506, 16 L ed 169, the United States is stated to be a political corporation. In Respublica v. Sweers, 1 Dall (Pa) 41, 1 L ed 29, it is held that the United States became a body corporate from the period of their association. In Helvering v. British-American Tobacco Co. (CCA 2d) 69 F2d 528, it is held that "the United States is a corporation." In United States v. Perkins, 163 US 625, 41 L ed 287, 16 S Ct 1073, the court describes the United States as "a purely political or governmental corporation." Chief Justice Marshall in United States v. Maurice (CC) 2 Brock 96, 109, F Cas No 15747, uses the following definition: "The United States is a government, and, consequently, a body politic and corporate, . . . . This great *corporation* was ordained and established by the American people and endowed by them with great powers for important purposes." In Fletcher's Cyclopedia of Corporations perm ed Vol 1, p 232, it is stated that, "The word 'corporation' in its most extensive significance applies to a nation or state and thus used, the United States and the several states or commonwealths may be termed 'corporations'." See also Cotton v. United States, 11 How (US) 229, 231, 13 L ed 675, 676; Cohen v. Virginia, 6 Wheat (US) 264, 5 L ed 257. There are cases where these definitions have not been applied but they are cases decided under particular statutes and on particular facts. Chisholm v. Georgia, 2 Dall (F) 419, 1 L ed 440; Georgia v. Atkins, 1 Abb(US) 22, F Cas No 5350; United States v. Cooper Corp. 312 US 600, 85 L ed 1071, 61 S Ct 742; Lowenstein v. Evans, (CC) 69 F 908. "Public corporations are such as are created by the people or the government, state or federal, for political or governmental purposes such as the United States, states, cities, counties, school districts and other municipal or political corporations." 18 CJS 394. "Public corporations or quasi corporations include the United States . . . ." 14 CJ 74.

There are various kinds of public corporations differing in

activity and degree in which they serve the public. The phrase "public corporations" as used in § 40–3316, supra, must be construed in its broadest sense. In that sense it includes the United States.

It follows that the City of Dickinson was authorized by said act to contract with the United States for a water supply.

The next objection raises the question of whether under § 40–3316, supra, the City, having agreed in the contract to make the payments from the water revenues, has the authority to make any liability thereunder a general obligation of the City of Dickinson.

An analysis of § 40–3316, supra, shows that two conditions are laid down before the City can enter into a contract for the purchase of water at wholesale, to-wit: owning a water distribution system and having inadequate water supply. It is conceded that those conditions exist in the City of Dickinson. Then the statute authorizes the City to make a contract to purchase water with a public corporation able and willing to furnish the water on such terms and for such a period not exceeding forty years as the governing body of the City shall deem appropriate subject to the approval of the people of Dickinson by a majority vote. In that contract the City *may* bind itself:

To establish and maintain rates for supplying water either according to a schedule agreed upon or sufficient to produce net stated amounts for specified periods during the life of the contract, or both; to prescribe in the contract, if desired, a net basis on which to compute such revenues; to appropriate and use the same for payments coming due under the contract, and, *if the contract so provides,* the city shall be obligated to pay for such water solely out of the net revenues. The respondent contends that the phrase "if the contract so provides" relates to the clause preceding it; that the meaning to be derived therefrom is that if the city binds itself to maintain a schedule of water rates then it must pay for the water solely from the revenues so obtained. There is some ambiguity about this language in the statute and that is a possible construction. However, the more reasonable construction based upon a read-

ing of the whole act and on its purpose is that said phrase relates to the subsequent clause and means that the city shall pay for the water solely out of such revenue only if the contract specifically makes that a provision. The intention was to authorize a city or a village to enter into such a contract and to stipulate therein, if so desired, that the payments thereafter required to be made under the contract should be made solely out of the revenues received from the sale of the water; and also to assure that where the contract so stipulates there can be no subsequent claim that there was any implied or contingent liability on the part of the city or village to pay the deficiency out of the general funds,—if the funds received from the sale of water were not adequate to make all the payments. In other words, it was the intention that if the contract provides that the payments stipulated shall be made solely out of the net water revenues, then there is or will be no obligation on the part of the city either implied or contingent to make payment otherwise than such as may be made from such net revenues.

█ The City may also bind itself, to pay at any agreed price for all water taken by the City and not resold. That is direct authority to pay for a part of the water from the general revenue of the city or village.

█ The City may further agree, to do and perform any other acts or things which in the discretion of the governing body may be reasonable and appropriate for the procurement of such water on the most efficient and economical basis.

The word "may" is, when used in its ordinary meaning, permissive rather than compulsory. Everything indicates it is used that way in this statute. See Murie v. Cavalier County, 68 ND 242, 278 NW 243, supra.

The city or village is given express authority in the statute to purchase water. That necessarily implies authority to pay for it. The governing body is given discretion as to length of time and the terms of contract, subject to the approval of a majority of the voters. Authority is then given to establish rates according to a schedule and to pay for the water solely out of such revenues if the Board deems that appropriate. In

such case it may, to assure the performance of the contract by the City, prescribe the method or basis on which net revenues are to be computed. This is merely authority for a permissive method of raising money for the payments. The statute does not provide that this shall be the exclusive method of raising the money. Instead it gives the governing body the authority to pay for the water not sold by other means and to do anything "reasonable and appropriate for the procurement of such water on the most efficient and economical basis."

Construing the statute as a whole it is clear that the intent of the legislature was to give authority to the municipality to purchase water and to bind itself to raise the money to pay for the same in such a manner as would secure for it the most efficient and economical contract. Otherwise the object of the act would be frustrated in case a City could not obtain a reasonable contract under the prescribed permissive method of raising the funds for payments.

The contract after fixing the amounts of the semi-annual payments provides in Article 6:

"The Board of City Commissioners shall provide by ordinance for the payment from net water revenue of each of the foregoing payments as it falls due. At any time that it shall appear that the net water revenues will be insufficient for making any of the foregoing payments, the City shall levy, or provide for the levy, of an annual tax upon the taxable property within the City in such an amount as will, together with the water revenues applied as prescribed below in Article 8, provide the amounts due the United States at the foregoing rates. Said tax shall be levied and collected in like manner as in the case of the annual tax levy in the annual appropriation ordinance." A further provision, Article 9, reads as follows:

"Each semi-annual installment which the City undertakes to pay under the terms of this contract, shall, as it accrues, be considered to be a general obligation of the City and payable from the general fund of the City, notwithstanding that payment of each semi-annual installment may be paid from the net water revenues of the City: . . . ."

Article 7 of the contract provides that: "The City shall establish and maintain rates and charges for its supplying of water to its inhabitants and industries which will produce net revenues sufficient to make the semi-annual payments at rates prescribed above in Article 6." But nowhere is there a provision in the contract that the water shall be paid for *solely* out of such revenues. Nor is the method or basis on which this net revenue shall be computed prescribed in the contract.

The City does not bind itself to pay for the water solely out of the net water revenues but combines with the provision for payments out of the net water revenues a general obligation on the City to pay any deficiency. That is the method taken to assure the United States that the City will perform its part of the contract. It must be presumed that the governing body of the City deemed that method best "for the procurement of such water on the most efficient and economical basis." Considering the act as a whole it must be held that the City had the authority so to do.

The next objection is that no appropriation has been made for the payment of the water for the first year as required by § 40–4020 ND Rev Code 1943. That section provides: "no contract shall be made by the governing body of a municipality and no expense shall be incurred by any officers or departments of the corporation unless there shall have been a previous appropriation providing for such expense." Attention is also called to § 40–4015, ND Rev Code 1943, providing that no expenditure shall be made nor liability incurred and no bill shall be paid in excess of the appropriation made therefor in the final budget. See Roberts v. Fargo, 10 ND 230, 86 NW 726.

That objection is premature. No contract has been entered into. The ordinance only gives the authority to enter into such contract. It must be presumed that the Board of City Commissioners will obey the law and make whatever appropriation is necessary before entering into the contract or incurring any liability under it.

The last objection is concerning the lack of watermains between the outlet from the dam and the City, for the construction

and payment for which no plans have been made. In that connection it must be pointed out that there is no need for the construction of said mains until just before the water is available. The presumption is that the Board of City Commissioners will do its duty and follow the law in connection therewith before that time. The law does not specify in what order the different steps in the construction of the project need to be taken. That objection does not affect the authority of the City to enter into the contract.

It is held, therefore, that the City of Dickinson is authorized by § 40-3316, ND Rev Code 1943, to enter into the proposed contract.

The judgment of the District Court is reversed, and the cause remanded to the District Court with directions to render judgment in conformity with this opinion.

CHRISTIANSON, Ch. J., BURKE AND NUESSLE, JJ., and SWENSON, District Judge, concur.

BURR and MORRIS, JJ., did not participate.