**FIRST AMERICAN BANK & TRUST COM-
PANY, a domestic corporation, et al.,
Respondents,**

v.

**G. W. ELLWEIN, State Examiner and Com-
missioner, Department of Banking and
Financial Institutions, et al., Appellants.**

No. 8747.

Supreme Court of North Dakota.

April 12, 1972.

Rehearing Denied May 18, 1972.

Helgi Johanneson, Atty. Gen., Bismarck, and Frank F. Jestrab, Sp. Asst. Atty. Gen., Williston, for appellants.

Frederick E. Saefke, Jr., and Thompson, Lundberg & Nodland, Bismarck, for respondents.

C. F. KELSCH, District Judge (On Reassignment).

This is an appeal from a judgment of the district court of Burleigh County entered August 20, 1971, wherein it determined and adjudged that the two Orders issued by the State Examiner on the 28th day of June, 1971, were in all things null and void.

The record shows, without dispute,

(1) That on the 28th day of June, 1971, G. W. Ellwein, as State Examiner, issued an Order directed to the First American Bank & Trust Company which, omitting the title, reads as follows:

Whereas, the Report of Examination of First American Bank & Trust Company, Bismarck, North Dakota, as of May 14, 1971 shows, and the undersigned finds that the First American Bank & Trust Company is insolvent. The report of insolvency has been certified to the State Banking Board.

Now therefore, you are duly directed to immediately relinquish possession of First American Bank & Trust Company's books, records and other property to Mr. Victor Abraham, Bank Examiner for the State of North Dakota.

By order of the Commissioner, Department of Banking and Financial Institutions, this 28th day of June, 1971.

/s/ G. W. ELLWEIN
G. W. Ellwein, Commissioner
Department of Banking and
Financial Institutions

and

(2) That the State Examiner issued a second Order on the same day wherein he found, among other things:

(a) That the actual cash market value of all of its assets are insufficient to pay its liabilities;

(b) That notwithstanding such fact said Bank continued to receive and accept deposits and by reason thereof he directed said Bank to forthwith cease accepting deposits, cease disbursing funds, call in numerous loans, cease certain advertising of investment programs, follow approved accounting practices, file the required statements, furnish $400,000.-00 in new capital and divest the present stockholders of their ownership and control, or in the alternative, show cause before the State Banking Board at the office of the State Examiner in the State Capitol at Bismarck, North Dakota, on Thursday, the 1st day of July, 1971, at

9:30 a. m., or at such other time as may be allowed, why a receiver for the First American Bank & Trust Company should not be appointed as provided by law.

Dated this 28th day of June, 1971, at Bismarck, North Dakota.

/s/ G. W. Ellwein
G. W. Ellwein, State Examiner and Commissioner

(3) That both of said Orders were served upon said Bank on the same day, whereupon it applied for and obtained a temporary injunction from the district court of Burleigh County

(a) Restraining the enforcement of both of said orders,

(b) Requiring the State Examiner and the State Banking Board to show cause why the temporary injunction should not be made permanent, and

(c) Why they should not be enjoined and restrained from issuing any further orders against said Bank.

(4) That upon the hearing on the 2nd of August, 1971, the court found and determined that both of said Orders were null and void ab initio. That judgment was entered accordingly on the 20th day of August, 1971, from which the State Examiner has taken this appeal.

Since both of these Orders were issued on the same day by the State Examiner we shall hereinafter, for the purpose of brevity, refer to the first, or short Order, as Order No. 1, and to the long Order in the alternative as Order No. 2.

Obviously the basic issue before us, in general terms, is the validity of the two Orders set out herein, but more precisely stated the crucial questions for decision are:

(1) Whether the State Examiner has the power and authority under § 6–07–04, N.D. C.C., to make an administrative finding that a bank or trust company which he has examined is insolvent, and if so to issue an ex parte order appointing a temporary receiver to take possession of all of its property to collect and conserve its assets and business for the benefit of its depositors and creditors, and

(2) Whether his administrative finding of insolvency and ex parte order appointing a temporary receiver are valid and binding upon the financial institution so examined:

(a) without regular proceedings having first been had before the State Banking Board upon the filing of a proper complaint alleging it to be insolvent and fixing a time for the hearing thereof upon the merits;

(b) without giving said bank reasonable notice thereof and affording it an opportunity to present evidence upon the issue of its insolvency;

(c) without making specific findings of fact and separate conclusions of law upon which its decision of insolvency is based;

(d) without the right of appeal and judicial review thereof; and

(e) without a substantial compliance with the principles of law applicable to administrative action and the fundamental requirements of due process of law.

Manifestly the answers to all of these questions will depend primarily upon the interpretation of all of our statutes applicable thereto, and therefore we believe that a proper evaluation of the public importance and the far-reaching consequences of our decision require that we set out and consider all of the pertinent provisions of our statutes relating:

(1) To the powers and duties of the State Banking Board;

(2) To the powers and duties of the State Examiner;

(3) To the procedural provisions of our Administrative Agencies Practice Act; and

(4) To the relevant canons of statutory construction; in order to determine the constitutional validity of both of said Orders.

We proceed first to a consideration of our statutes which create the State Banking Board and define its powers and duties.

The State Department of Banking and Financial Institutions was created by § 6–01–01, N.D.C.C., as amended by Chapter 96, Session Laws 1969. The Board consists of five members, and the State Examiner acts as chairman thereof. It is required to hold four annual meetings and such special meetings as the State Examiner may call upon proper notice.

The Board is expressly authorized by statute:

(1) To make all rules and regulations for the government of all banks and financial institutions (§ 6–01–04, N.D.C.C.);

(2) To receive and approve all reports made by financial institutions under its jurisdiction;

(3) To appoint receivers; and

(4) To make and enforce such orders as in its judgment may be necessary or proper to protect the public, depositors and creditors (§§ 6–01–04 and 6–01–09, N.D.C.C.).

We next consider the powers and duties of the State Examiner. On this issue our statutes provide in substance:

(1) That the State Examiner shall serve as chairman of the State Banking Board;

(2) That he shall exercise constant supervision over the business affairs of all financial institutions placed within the jurisdiction of the Board;

(3) That he shall make periodic examinations of all banks and financial institutions, without previous notice, verify its assets and liabilities; he shall examine the validity of mortgages, investigate methods of operation and their system of accounting to ascertain whether such methods conform to law and sound banking usage and principles; and

(4) He shall report all infringements by such institutions to the State Banking Board and report their financial conditions, with his recommendations and suggestions, and the Board may take such action as, in its discretion, the exigencies may demand. Finally, if the State Examiner has reasonable cause to believe that a bank or financial institution which he has examined is insolvent then it is his mandatory duty to seize its property, books and records, collect moneys due it and conserve its assets and business for the benefit of its depositors and creditors. (§§ 6–01–09 and 6–07–04, N.D.C.C.)

We next proceed to the powers and duties of the State Banking Board under the rules prescribed by the Administrative Agencies Practice Act which apply to and govern the validity of administrative action.

The Administrative Agencies Practice Act requires that all administrative agencies observe rules of procedure, in substance as follows:

(1) In proceedings brought before an administrative agency the petitioner or the administrative agency when acting upon its own initiative shall prepare and file with the agency having jurisdiction a clear and concise statement or complaint which contains the claims of charges and the relief sought. (§ 28–32–05, N.D.C.C.)

(2) Upon the filing of such complaint the agency shall issue a notice for hearing which shall fix the time and place for the trial thereof upon its merits. A copy of the complaint and notice of hearing must be served upon the respondent. (§ 28–32–05, N.D.C.C.)

(3) At such hearing the agency shall afford the party proceeded against an opportunity to present evidence, to examine and cross-examine witnesses as is permitted to

the parties in an action in the district court. (§ 28–32–05, N.D.C.C.)

(4) No decision shall be made by the agency until all parties in interest have been furnished with written specifications of issues nor until an opportunity has been afforded to present evidence and to be heard on the precise issues so specified. But these requirements shall not apply to the Commissioners of the Workmen's Compensation Bureau, who may make an order without giving the notice required therein. (§ 28–32–08, N.D.C.C.)

(5) The agency shall make concise and explicit findings of fact and separate conclusions of law and base its decision thereon and give notice thereof to the interested parties by certified mail. (§ 28–32–13, N.D.C.C.)

(6) Any party to such proceedings, except in cases where the decision of the administrative agency is declared to be final by statute, may appeal to the district court from such decision within thirty days by giving the notice required. (§ 28–32–15, N.D.C.C.) Youmans v. Hanna, 35 N.D. 479, 160 N.W. 705 (1916).

We now proceed to consider the fundamental principles of law which apply to and govern the validity of administrative action. They are:

■ (1) That the legislature in creating an administrative agency must enjoin upon it a certain course of procedure and certain rules or decisions in the performance of its functions and that a substantial compliance with the statutory requirements is essential to the validity of administrative action. The Supreme Court of the United States in referring to this rule has said:

It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined, and show a substantial compliance therewith to give validity to its action. When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective.

Wichita Railroad & Light Company v. Public Utilities Commission, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124.

The principle that a substantial compliance with statutory requirements is necessary to render administrative action valid was recognized and approved by this Court in State ex rel. Public Service Commission v. Northern Pacific Railway Company, 75 N.W.2d 129, 135 (N.D.1956), where our Court said:

It is clearly established by the record that the Public Service Commission in issuing its order of November 27, 1954, was attempting to assert and exercise a general power given it without complying with jurisdictional requirements imposed by statute for such exercise. We conclude that the order of the Commission . . . was a nullity and that the judgment entered . . . was erroneous.

■ It is an elementary principle of law that an administrative agency can only exercise its statutory powers while duly assembled, upon proper notice, at a regular or special meeting. Its powers and duties cannot be exercised by a member thereof acting independently or separately from the administrative agency. (2 Am.Jur.2d Administrative Law § 227, page 57.) This principle of law has also been recognized and approved by this Court. While speaking of the State Examiner in Youmans v. Hanna, *supra*, 160 N.W. 711, the Court said:

Though an employé intrusted with responsible duties, the statute does not in any sense make him an independent public officer, but rather an agent of the banking board and subject to its directions and control.

We now reach the question as to whether the State Banking Board and the State Examiner are administrative agencies.

An administrative agency is defined by our statute to include:

(1) Any board or commission, and

(2) Any officer

having statewide jurisdiction and authority to make any findings, determination or orders, award or assessments which have the force and effect of law; and which findings and decisions are by express statute subject to review by the courts of this state (§ 28–32–01, N.D.C.C.).

■ Construing the provisions of the statutes we have set out herein together in the light of the principles of law applicable to administrative action, we conclude that the State Banking Board is an administrative agency:

(1) Because it has statewide jurisdiction over all banks and financial institutions;

(2) Because it has the express power and duty to make rules and regulations for the government thereof which have the force and effect of law;

(3) Because it has the power and duty to file and serve complaints, specify issues for hearing, give reasonable notice to all parties interested, afford them an opportunity for a fair hearing, to make specific findings of fact and conclusions of law and render a decision based thereon, which by express statute are subject to judicial review.

■ Further we find and determine that the State Examiner is not an officer as said term is defined in the Administrative Agencies Practice Act for the reasons:

(1) That he has no statewide regulatory powers to make or enforce any rules or regulations;

(2) That he has no power to file complaints and to conduct hearings upon reasonable notice or to make specific findings of fact and to render decisions thereon:

(3) That he has no power to issue any orders for the enforcement thereof, except such limited authority that he may have under § 6–07–04, N.D.C.C.;

(4) That there is no provision in our statutes declaring that his orders shall be final; and

(5) That his findings of insolvency or ex parte orders are not, by express statute, subject to judicial review.

■ But counsel for appellant claims, however, that the two Orders here in issue were not the Orders of the State Examiner but the Orders of the State Banking Board. It is true that Order No. 2 contains a recital to the effect that the State Examiner submitted his report of the examination of the respondent bank to the State Banking Board and that the same was approved by it, but the record does not specifically show:

(1) That said Orders were issued by the State Examiner pursuant to a motion, resolution or other directive of the State Banking Board made or passed when the Board was duly assembled and acting as such at a regular or special meeting called by the State Examiner authorizing him so to do;

(2) That they were issued with reasonable notice to the respondent bank and without a fair hearing before the State Banking Board upon the issue of its insolvency.

In the *Wichita* case, *supra,* as here, it was claimed that the action there involved was in fact the action of the administrative agency, but the Court in its answer thereto said:

It is pressed on us that the lack of an express finding may be supplied by implication and by reference to the averments of the petition invoking the action of the Commission. We cannot agree to this.

Wichita R. R. v. Pub. Util. Comm., 260 U.S. 48, 59, 43 S.Ct. 51, 55.

Therefore in the absence of a record showing that the State Banking Board while duly assembled and acting as such had substantially complied with the controlling provisions of §§ 28–32–05 to 28–32–13, inclusive, we follow the decision in the *Wichita* case and hold that the two Orders in question were not the Orders of the Banking Board as claimed, but of the State Examiner while acting as such official in an individual capacity.

Having determined that the State Examiner is not an administrative agency; that he has no authority to act separately in an individual capacity, that the two Orders here involved were not issued by the State Banking Board while duly assembled and acting as such agency but that they were issued by the State Examiner, the crucial question arises as to what authority the State Examiner had, if any, to find from his examination that the respondent Bank was insolvent and to issue an immediate ex parte order appointing a receiver to take possession of its property.

Counsel for appellant claims in effect that the State Examiner had such authority under the express provision of § 6–07–04, N.D.C.C.; that this is a special statute providing for a remedy in an emergency; that it is valid and vests a reasonable discretion in him to determine what remedy he should pursue.

On the contrary, counsel for the respondent Bank has challenged the validity of all of these contentions and strenuously contends in substance:

(1) That said section does not apply to the respondent Bank, which is organized under Chapter 6–05, N.D.C.C.; and

(2) That if it be held applicable without a substantial compliance with the procedural provisions of the Administrative Agencies Practice Act that such interpretation would render it unconstitutional for want of due process of law.

The argument that § 6–07–04 is inapplicable to the respondent Bank is based upon a fourfold premise, to wit:

(1) That §§ 6–05–27 and 6–05–29 define and limit the State Examiner's powers and his duties where he finds a bank which he has examined is insolvent;

(2) That if he finds a bank is insolvent he can require such bank to increase its deposits with the state treasurer sufficient in amount to insure the safety of all of its deposits, trusts and contingent liabilities, and that if such deposits are made it will foreclose any genuine claim that the bank in issue is in fact insolvent.

(3) That if the State Examiner finds that such bank was conducting its business in an unsafe or unauthorized manner and that it would be unsafe and inexpedient to permit it to continue to transact business that then he can direct said bank to discontinue such practices and communicate his findings to the Attorney General, who should initiate such proceedings as the case may require pursuant to § 6–05–29. That the powers of the State Examiner are limited and restricted to the remedies provided therein and which he must exhaust before he has any authority to proceed in any other way.

(4) That § 6–05–34, N.D.C.C., specifically enumerates the sections of law that shall apply to and be observed by corporations organized under said chapter. That it does not refer to or include § 6–07–04 therein, and consequently counsel claims that the express exclusion of said section from § 6–05–34 warrants the inference that the legislature did not intend to make it applicable to corporations organized under said chapter, for if it had so intended it could have included it therein.

We think that these contentions are unsound and intenable, and that § 6–07–04 does apply to the respondent Bank for the reasons:

(1) That § 6–05–28 expressly provides, in part, that the State Examiner

shall assume and exercise over such corporation, its business and officers, all the power and authority conferred upon him over banks and other financial institutions. Stated differently, this section, by reference, requires the State Examiner to exercise all of the powers he has under § 6–07–04 in his supervision of banks organized under Chapter 6–05; and

(2) That it is a general rule that all laws must be uniform in operation. North Dakota Constitution § 11.

We know of no principle of law or just and sound reason why this emergency measure should not be held to apply equally to all banks and financial institutions or why the respondent bank should be treated differently or be held to be exempt from its protective provisions. Clearly, to sustain the claim that it does not apply would render it discriminatory rather than uniform in its operation. F. W. Woolworth Co. v. Gray, 77 N.D. 757, 46 N.W.2d 295 (1951).

■ We now consider the second basic contention advanced and relied upon by the respondent for an affirmance of the judgment of the district court, and that is, in effect, that if it be held that § 6–07–04 applies and that the State Examiner's administrative finding of insolvency and his ex parte order appointing a receiver are final and binding upon it without a substantial compliance with the procedural requirements of the Administrative Agencies Practice Act, that such interpretation of said section would render it unconstitutional and void for want of due process of law.

The power and competency of the legislative assembly to authorize a banking official to make an administrative finding of insolvency and to issue an ex parte order to take possession of a financial institution which is found to be insolvent, without a prior judicial determination of its insolvency cannot be successfully challenged. The Supreme Court of the United States, in construing provisions of comparable statutes, has long since held that a State may, consistent with due process of law, clothe a bank commissioner with the power to close the doors of a state bank if on examination it is found to be insolvent without waiting for judicial proceedings. Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112; Title Guaranty & Surety Co. v. Allen, 240 U.S. 136, 36 S.Ct. 345, 60 L.Ed. 566; 10 Am.Jur.2d Banks § 654, page 716.

To determine the validity of this contention we must construe § 6–07–04 in the light of the relevant canons of statutory construction applicable thereto. They are:

■ (1) That in passing on the validity of a legislative enactment every reasonable presumption is in favor of its constitutionality unless it clearly violates some provision of our State Constitution or the Federal Constitution;

■ (2) That wherever possible statutes must be interpreted in accordance with constitutional principles of law so as to give to all interested parties reasonable notice and a fair hearing upon the merits, to adduce evidence and grant a judicial review of any order or decision upon appeal therefrom. American Power & Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 67 S.Ct. 133, 143, 91 L.Ed. 103.

This principle of law has been recognized and approved by this Court in State ex rel. Lemke v. Chicago & N. W. Ry. Co., 46 N.D. 313, 179 N.W. 378, 381 (1920), where the Court, referring to the powers of the Board of Railroad Commissioners, said:

Its action, therefore, concerning any subject-matter within its jurisdiction, to be valid, must be in substantial conformity with the statutes governing its procedure, and must be consonant with due process of law.

■ (3) Where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional, and by the

other of which it would be valid, the Court will adopt a construction which will sustain its validity. Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L. Ed. 1143; 16 Am.Jur.2d Constitutional Law § 145, page 347. This principle has likewise been approved and applied by this Court in State v. Burleigh County, 55 N.D. 1, 212 N.W. 217 (1927), where the Court said:

> Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise, and by the other of which such questions are avoided, it is the duty of courts to adopt the latter construction.

■ Manifestly the issue before us is clearly not one of legislative power, but of legislative intent. To ascertain the true legislative intent of § 6-07-04 it is our primary duty to construe all statutes relating to the same subject matter together to harmonize their apparent conflicting provisions, if possible, and to give full force and effect to the true legislative intent. Harding v. City of Dickinson, 76 N. D. 71, 33 N.W.2d 626 (1948); Wallentinson v. Williams County, 101 N.W.2d 571 (N.D. 1960).

Applying this rule the questions arise whether the State Examiner while acting independently in his official capacity in the discharge of his administrative duties has the authority:

(1) To make an administrative finding that the financial institution which he has examined is insolvent, and

(2) To issue an ex parte order appointing one of his examiners to act as a temporary receiver to collect and conserve its assets and business for the benefit of its depositors and creditors.

■ We believe that the language of § 6-07-04 is plain and clear, that its meaning is not doubtful or ambiguous, and that when its words are construed in their ordi-

nary sense we find and conclude that the State Examiner while acting independently in his official capacity has the authority:

(1) To make an administrative finding that the bank which he has examined is insolvent, and

(2) To issue an ex parte order appointing an examiner from his department to act as temporary receiver or conservator, as distinguished from a permanent receiver, to collect and conserve its assets and business for the protection of its depositors and creditors and thereby preserve the status quo during the pendency of regular proceedings before the State Banking Board to determine its insolvency, and if found insolvent to appoint a permanent receiver with the power to liquidate its business and to distribute its assets.

We now reach the more important and difficult question for decision, and that is whether the legislative assembly by the enactment of § 6-07-04 intended that the State Examiner's administrative findings of insolvency and his ex parte order appointing a temporary receiver or conservator should be held to be final and binding upon the financial institution in issue without reasonable notice and a fair hearing before the State Banking Board and without the right of judicial review upon timely appeal. We believe and find that the legislative assembly of this State did not intend such consequences for the reasons:

(1) That it only authorized him to appoint a temporary receiver for the purpose set out herein as distinguished from a permanent receiver with the power to liquidate its business affairs and to distribute its assets;

(2) That it did not authorize him to file a complaint specifying that the bank in issue was insolvent, to set a time for hearing upon the merits, to give reasonable notice, to make specific findings and a conclusion of insolvency, to render a decision based thereon and to issue an order for the enforcement thereof;

(3) That it did not provide that his finding of insolvency or the ex parte order which he may make in the exercise of his administrative powers or discharge of his duties should not be subject to judicial review; and

(4) That it did not declare that his administrative findings or ex parte orders directing the seizure of the property of an insolvent bank were to be final and not subject to judicial review, which the legislature could have done by bringing within the exception contained in § 28–32–15, but did not do so.

■ It is elementary that the right of appeal is purely statutory. Helland v. Jones, 76 N.D. 511, 37 N.W.2d 513 (1949).

Although we find no express statutory provision authorizing an appeal from the State Examiner's ex parte orders we determine that the constitutional rights of all financial institutions must be respected and protected. Substantial compliance with the fundamental requirements of due process of law require that they be given reasonable notice and a fair hearing on the issue of insolvency and the appointment of a permanent receiver before the State Banking Board, held for that purpose.

This interpretation of said section safeguards and protects the constitutional right of the bank or trust company in issue to challenge the necessity, reasonableness and the legality of the State Examiner's administrative finding of insolvency and his ex parte order appointing a temporary receiver or conservator before the State Banking Board in a hearing had for the purpose of determining its solvency and the appointment of a permanent receiver. Its decisions upon these issues are, by express statute, subject to judicial review upon timely appeal.

We believe that our interpretation of this emergency measure is not only reasonable, sound and expressive of the true legislative intent but also finds support in and is consistent with the fact that §§ 6–05–27 and 6–05–29 expressly authorize the State Examiner:

(1) To make an administrative finding that the amount of cash deposited with the state treasurer is insufficient to secure its deposits, trust funds and liabilities, or that its banking practices are illegal;

(2) To issue ex parte orders requiring it to increase its deposits or to direct that it shall discontinue its illegal banking practices; and

(3) That neither of these sections expressly provide for the right of judicial review upon appeal of his administrative findings of insolvency or ex parte orders issued thereon.

Manifestly the nature of the administrative authority and the methods prescribed for the exercise thereof conferred on the State Examiner by § 6–07–04 does not differ materially from, but is comparable to, the administrative authority given to him in §§ 6–05–27 and 6–05–29 upon which the respondent relies to protect its constitutional and statutory rights. It must be self-evident, therefore, that the respondent's challenge of the constitutional validity of the former, while defending the constitutional validity of the latter, is not only utterly inconsistent but also unsound in principle and reason.

Counsel for the respondent Bank argues vigorously, however, of the grave inherent dangers that are involved in the exercise of the unlimited administrative powers by the State Examiner under § 6–07–04 if its validity is sustained. He stresses the irreparable injury that may result from an unreasonable, oppressive and arbitrary exercise of such power or the abuse of his official discretion. We believe, however, that the interpretation that we have placed upon said section herein should dispel all such fears and reduce the probability of irreparable injury from the exercise of his administrative powers to a minimum because he will ultimately be held responsible for his official administrative action.

Construing all of the statutes relating to banks and financial institutions, to the State Banking Board, the State Examiner, and the Administrative Agencies Practice Act set out herein in the light of the canons of statutory interpretation set out herein we believe, find and conclude:

■ (1) That banks are engaged in a business affected with the public interest and that as such they are subject to reasonable regulation under the police power of the state. Wirtz v. Nestos, 51 N.D. 603, 200 N.W. 524 (1924); Divide County v. Baird, 55 N.D. 45, 212 N.W. 236 (1926); Engel v. O'Malley, 219 U.S. 128, 31 S.Ct. 190, 55 L.Ed. 128; 10 Am.Jur.2d Banks § 10, p. 35.

■ (2) That § 6–07–04 is a special emergency measure which provides a speedy and effective remedy in an emergency to protect the public and private interest, and to prevent an irreparable loss or injury arising from the insolvency of any bank or financial institution;

■ (3) That special statutes in case of an irreconcilable conflict prevail over general provisions of law and constitute a special exception thereto. Section 1–02–07, N.D.C.C.; Kershaw v. Burleigh County, 77 N.D. 932, 47 N.W.2d 132 (1951).

■ (4) That § 6–07–04 has not been repealed by necessary implication. That repeals by implication are not favored. There must be a clear repugnancy between the provisions of the new law and the old statute to such an extent that a necessary implication arises that the legislature by enactment of the latter Act intended to repeal the former, and then only to the extent of its repugnancy. County of Sargent v. Sweetman, 29 N.D. 256, 150 N.W. 876 (1915); Adams County v. Smith, 74 N.D. 621, 23 N.W.2d 873 (1946). We find that no clear repugnancy exists between this statute and any subsequent legislative Act.

■ (5) That the legislative assembly has the power to and did authorize the State Examiner to make a preliminary administrative finding that the bank which he examined was insolvent, and if he so found he had the mandatory duty to issue an ex parte order appointing a temporary receiver to protect and conserve its assets and business during the pendency of regular proceedings had before the State Banking Board to determine its solvency, and if found insolvent to appoint a permanent receiver to liquidate its business affairs and to distribute its remaining assets.

■ (6) That the legislative assembly by the enactment of § 6–07–04 did not intend to make the State Examiner's preliminary administrative finding of insolvency or his ex parte order appointing a temporary receiver or a conservator final and binding upon the bank involved without the right to reasonable notice and a fair hearing before the State Banking Board and the right of judicial review upon timely appeal; and

■ (7) That our statutes relating to the powers and duties of the State Banking Board and the State Examiner show with reasonable certainty that the legislative assembly did not intend to create dual administrative agencies with concurrent and conflicting regulatory powers in the discharge of their duties, but on the contrary they show that the legislative assembly intended to vest all of the regulatory powers over all banks and financial institutions in the state in the State Banking Board and that it, and it alone, has complete supervision and control thereof, with the exception of the administrative authority vested in the State Bank Examiner in the statutes set out here.

■ (8) That § 6–07–04 must be interpreted:

(a) To safeguard and protect the constitutional rights of all financial institutions to challenge the necessity, reasonableness and legality of the State Examiner's preliminary administrative finding of insolvency and of his ex parte orders appointing a temporary receiver before the State Bank-

ing Board at a regular hearing on the issue of its insolvency and the appointment of a permanent receiver;

(b) To require a substantial compliance with the procedural requirements of the Administrative Agencies Practice Act as a condition precedent to the validity of its decisions; and

(c) To assure the right of judicial review upon appeal from such decisions. Langer v. Gray, 73 N.D. 437, 15 N.W.2d 732 (1944); Northern Pacific Ry. Co. v. McDonald, 77 N.D. 194, 42 N.W.2d 321 (1950).

To sustain respondent's challenge to the constitutional validity of the special emergency measure here in issue would require us:

(1) To strike down and nullify the only speedy and effective remedy provided by law in an emergency for the protection of the public and private interest in an insolvent financial institution;

(2) To adopt a construction which would render it void rather than one which would sustain its validity;

(3) To hold that the state was powerless to provide for such protection in an emergency notwithstanding the fact that the Supreme Court of the United States has specifically held, in effect, that a state may authorize a bank commissioner to close the doors of a state bank if on examination he finds it to be insolvent without waiting for judicial proceedings or granting the right of judicial review upon appeal.

This we have no right to do. It is our solemn duty to give full force and effect to this special emergency measure insofar as it is consistent with and does not violate any of the provisions of the State or Federal Constitutions. Gripentrog v. City of Wahpeton, 126 N.W.2d 230 (N.D.1964).

We are satisfied that the interpretation which we have placed upon this statute does not deny or deprive, but respects and fully protects, the constitutional and statutory rights of the respondent bank. We believe that our interpretation is reasonable, sound, expressive of the true legislative intent, and consistent with the essential requirements of due process of law.

Testing the constitutional validity of Order No. 1, we find from an examination thereof that although it does not state that he appointed his examiner to act only as a temporary receiver to protect and conserve its assets and business for the benefit of its depositors and creditors and to preserve the status quo during the pendency of regular proceedings before the State Banking Board to determine its solvency and for the appointment of a permanent receiver, we believe, however, the fact that he issued Order No. 2 on the same day requiring said bank to show cause, in the alternative, before the State Banking Board why a receiver should not be appointed supports and justifies our interpretation of Order No. 1.

We conclude that the issuance of Order No. 1 was authorized by and constitutes a substantial compliance with the express provision of § 6–07–04. We therefore sustain its constitutional validity and reverse the judgment of the district court declaring it null and void.

Finally we reach the question of the constitutional validity of Order No. 2 wherein the State Examiner recites, among other things, that his report shows that the respondent Bank was insolvent, which he certified to and which was approved by the State Banking Board and wherein he required the immediate compliance by said Bank with all of its directives, or to show cause, in the alternative, why a receiver should not be appointed.

Judging its validity by the conclusions we have reached herein, we determine:

(1) That the State Banking Board has no power or authority under the Administrative Agencies Practice Act to find that the respondent Bank was in fact in-

solvent by a mere approval of the State Examiner's report containing such preliminary finding without a substantial compliance with the procedural requirements of said Act set out herein;

■ (2) That in the absence of a record showing that the State Banking Board had substantially complied with said requirements we conclude that said order was issued without any authority in law;

■ (3) That the issue for the appointment of a permanent receiver presented in the alternative order to show cause could not properly or lawfully arise for decision by the State Banking Board before it had determined that the respondent Bank was insolvent by a substantial compliance with the procedural requirements of the Administrative Agencies Practice Act.

We are therefore constrained to conclude that the issuance of Order No. 2 by the State Examiner was unauthorized, unlawful, and an arbitrary exercise of regulatory power vested in the State Banking Board; and as such it is null and void for want of due process of law.

Consequently we affirm the judgment of the district court declaring Order No. 2 null and void, without prejudice to the right of the State Banking Board to institute such further proceedings consistent with this decision that it may determine to be reasonable and necessary for the protection of public and private interests in said financial institution.

We therefore remand these proceedings to the district court to enter judgment accordingly, without statutory costs to either party.

ERICKSTAD, Acting C. J., and TEIGEN, J., concur.

STRUTZ, C. J., and PAULSON, J., deeming themselves disqualified, did not participate; C. F. KELSCH and EMIL A. GIESE, District Judges of the Sixth Judicial District, sitting in their stead.

EMIL A. GIESE, District Judge (dissenting).

I dissent and would affirm the decision of the trial court.

First American Bank & Trust Company was organized as an annuity, safe deposit, surety and trust company pursuant to Chapter 6–05, North Dakota Century Code.

Chapter 6–05, on the other hand, provides for the organization, powers, management and regulation of annuity, safe deposit, surety, and trust companies which come within the definition of banking institutions but not banking associations. Both are corporations but differ widely in requirements of organization, qualification, powers, scope of activities, and stringency of authorization and regulation.

Nelson v. Dakota Bankers Trust Company, 132 N.W.2d 903, 909 (N.D.1965).

First American Bank & Trust Company is a special type of corporation intentionally surrounded with safeguards not provided for general banking corporations, and which were undoubtedly provided for the purpose of protecting the interests, not only of creditors, but of shareholders and all others interested in or affected by the business of such a corporation.

The State Examiner in this case is governed by the provisions of Chapter 6–05, N.D.C.C., relating to annuity, safe deposit, surety, and trust companies. Under § 6–05–28, N.D.C.C., the State Examiner shall make a full, true, complete and accurate examination and investigation of the affairs of each corporation doing business under this Chapter once in each six months.

From such examination of the business of any such corporation if it shall appear to the State Examiner that the deposit made by the corporation with the state treasurer is insufficient to insure the safety of its deposit, trust and contingent liabilities, he shall make an order requiring an increase of such deposit under § 6–05–27, N.D.C.C. The corporation is then re-

quired to make a deposit in an amount sufficient to comply with said order.

Further, under § 6–05–29, if from such examination it appears to the examiner that such corporation has committed a violation of law or is conducting its business in an unsafe or unauthorized manner or that the deposit made by it with the state treasurer is insufficient to protect the interest of all concerned, the examiner, by an order, shall direct the discontinuance of such illegal or unsafe practices and order it to conform to the requirements of the law or to make a further deposit with the state treasurer in an amount sufficient to insure the safety of its trust, deposit and contingent liabilities. Upon any such corporation refusing to comply with any such order or whenever it shall appear to the examiner that it is unsafe or inexpedient for any such corporation to continue to transact business he shall communicate the facts to the Attorney General, who thereupon shall institute such proceedings against any such corporation as the case requires.

In this case, the State Examiner has not issued any order requiring this corporation to make a further deposit with the state treasurer in an amount sufficient to insure the safety of its trust, deposit and contingent liabilities. I am of the opinion that the State Examiner is obligated under the provisions of this section to issue such order to the corporation involved directing a further deposit in an amount sufficient to insure the safety of the trust, deposit and contingent liabilities of this corporation if it appears from such examination that such deposit is necessary to insure the safety thereof.

Section 1–02–07, N.D.C.C., provides that whenever a general provision in the statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions; but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later, and it shall be the manifest legislative intent that such general provision shall prevail.

The general rule on statutory construction, as given in 82 C.J.S. Statutes § 369 is that:

General and special statutes should be read together and harmonized, if possible; but, to the extent of any necessary repugnancy between them, the special statute will prevail over the general unless it appears that the legislature intended to make the general act controlling.

Section 6–07–04, N.D.C.C., upon which the majority relied, is a general statute relating to the dissolution, insolvency, suspension, and liquidation of any association or corporation organized under the provisions of this Title, Banks and Banking, which includes all forms and types of banks, state banks, savings banks, trust companies, building and loan associations, mutual investment corporations, mutual savings corporations, banking institutions, and other financial corporations, exclusive of The Bank of North Dakota, and all credit unions, organized and doing business under the laws of North Dakota and engaged wholly or in part in the receiving of deposits or the selling of their certificates or other evidences of indebtedness or obligations to the public, including the First American Bank & Trust Company organized under Chapter 6–05, N.D.C.C.

However, §§ 6–05–27 and 6–05–29 are special statutes pertaining to the duties of the State Examiner in relation to banking institutions organized under Chapter 6–05 which require the State Examiner to do certain things upon finding that the banking institution is not complying with the law or that the deposit made by it with the state treasurer is insufficient to protect the interests of all concerned. The directives as contained in §§ 6–05–27 and 6–05–29, N.D.C.C., are mandatory and must be complied with by the State Examiner.

KNUDSON, J., concurs in dissent of EMIL A. GIESE, District Judge.

### ON PETITION FOR REHEARING

KELSCH, District Judge.

The respondent has filed an original and supplemental petition for a hearing, which contains a great number of specifications and assignments of error. We have carefully analyzed and considered all of them. We find that some are devoid of merit in fact and law; that many have been fully argued, considered and decided; and that some are new, in which the respondent has challenged the legality of our decision insofar as it sustains the validity of State Examiner's Order No. 1, and in which it claims that our decision is unsound, inconsistent and contrary to law.

We deem it advisable to accept and answer this challenge lest it be claimed and believed that our silence constitutes an indisputable admission that our decision is, indeed, as claimed, unsound, unreasonable and inconsistent with the true legislative intent.

The attack upon the validity of our decision is based upon seven grounds, which we shall state and answer separately.

First. Respondent claims that we erred in our interpretation of § 6–07–04 by concluding that the State Examiner while acting in an individual capacity had the authority

(1) To make an administrative finding of insolvency; and

(2) To issue an ex parte order appointing a temporary receiver to seize the property of the respondent bank.

It is argued, in effect, that this interpretation is unsound and inconsistent with our determination

(1) That under *Youmans* [Youmans v. Hanna, 35 N.D. 479, 160 N.W. 705 (1916)] the State Examiner had no power to act in an individual capacity but could only act as a member and chairman of the State Banking Board;

(2) That only the State Banking Board had the power to find and determine, after reasonable notice and a fair hearing, that the respondent bank was in fact insolvent;

(3) That having held that only the State Banking Board had the power to determine that a banking institution was in fact insolvent upon reasonable notice and a fair hearing, it could not be reasonably and consistently held, as we did, that the State Examiner could do so without such notice and hearing which the State Banking Board could not do; and

(4) That we have no statutory provision authorizing the State Examiner to appoint a temporary receiver to take possession of, control, and manage the banking business of the respondent, as we have held he did.

These contentions clearly show that the respondent has misinterpreted and misapplied our opinion. To clarify this misunderstanding and the confusion complained of it is sufficient to state that in our opinion we set out the pertinent provisions of our statutes relating

(1) to the powers and duties of the State Banking Board;

(2) to the powers and duties of the State Examiner; and

(3) to the applicable provisions of the Administrative Agencies Practice Act.

These statutory provisions clearly authorize the State Examiner to act in a dual or twofold capacity, first as a member and chairman of the State Banking Board while acting as an administrative agency, and second, as an administrative officer acting in an individual capacity as such official.

■ Stated differently, when the matter in issue in any proceeding comes within the exclusive jurisdiction of the State Banking Board that then he can only act as a member and chairman thereof and as

such he can only participate in its hearings, deliberations, findings and decisions. In such a proceeding he has no authority to act in an individual capacity independently of the State Banking Board.

On the contrary, when the subject matter involves the exercise of any power expressly conferred or the performance of any duty expressly imposed upon him as such official that then he has both the right and the duty to act in an individual capacity as such official without the presence of or the participation in or by the State Banking Board when acting as an administrative agency.

That pursuant to and consistent with this basic difference between the action of an administrative agency and that of the State Examiner when acting in an individual capacity, we hold that the State Examiner has the authority to exercise the powers and to perform the duties imposed upon him by § 6–07–04 when acting in an individual capacity separately from and independently of the State Banking Board.

Further, the respondent strenuously insists that we erred in sustaining the right of the State Examiner to appoint a temporary receiver to seize the property of the respondent because there is no provision in any of our statutes authorizing him so to do.

It is true that we have no statutory provisions which expressly authorize the State Examiner to appoint a temporary receiver and that it might have been more appropriate to have held that he only had the power to act as a conservator to preserve the status quo or to appoint one of his deputies to act in such capacity. But there is ample judicial authority to sustain the right of the State Examiner to act as a conservator or to appoint one of his deputies to do so; that the functions of a conservator and those of a temporary receiver are substantially the same, namely, to obtain temporary possession, control and management of the banking institution involved and to conserve and preserve the

status quo pending regular proceedings before the proper administrative agency. Obviously, the difference here is only one of terminology and not of substantive powers and functions, and as such it does not render our decision erroneous. Gunsch v. Gunsch, 69 N.W.2d 739 (N.D.1954); Hill v. Bank of San Pedro, 41 Cal.App.2d 595, 107 P.2d 399 (1940); Westveer v. Ter-Keurst, 276 Mich. 277, 267 N.W. 834 (1936); 10 Am.Jur.2d, Banks and Banking, § 679, p. 733.

Second. The respondent has assailed the validity of our decision on the ground that we erred in concluding that § 6–07–04 was a special statute and as such it prevailed over §§ 6–05–27 and –29. We disagree.

Speaking of the difference between general and special statutes, this Court has said:

"'"A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." * * * "Special laws are those made for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances." * * * A "general law," as the term is used in this constitutional provision, is a public law of universal interest to the people of the state, and embracing within its provisions all the citizens of the state, or all of a certain class or certain classes of citizens. It must relate to persons and things as a class, and not to particular persons or things of a class. It must embrace the whole subject, or a whole class, and must not be restricted to any particular locality within the state.'" Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849, 864 (1953).

Applying this definition to the provisions of § 6–07–04, we held that it was a special statute, first, because it confers certain powers and duties only upon the State Examiner, and, second, because the powers and duties referred to therein are limited to a specific thing or purpose, that

of conserving the status quo as distinguished from the general purpose of dissolution and liquidation. Our statute (§ 1–02–07, N.D.C.C.) expressly provides, in effect, that a special statute prevails only over a general provision when two conditions exist: (1) a conflict must exist between the two, and (2) that the conflict must be irreconcilable. Applying this statutory test to the statutes here, in issue, we believe that a careful analysis of their respective provisions in the light of the subject matter to which they relate clearly show that there is no actual conflict between the intent and purpose thereof. Sections 6–05–27 and –29 do not authorize the State Examiner to make any administrative finding of insolvency nor do they authorize him to seize the property of a bank which he may find to be insolvent upon examination thereof, while § 6–07–04 does expressly so provide. We are convinced that there is no actual conflict, much less an irreconcilable one, between these statutes because they do not deal with or relate to the same subject matter. We believe, therefore, that in the absence of the existence of an actual and irreconcilable conflict between the statutes here, in issue, they must be construed and applied together so as to carry out and give full force and effect to the true legislative intent expressed therein.

Third. The respondent has critically assailed our interpretation of § 6–05–34. It asserts that we erred in failing to consider and to apply the rule, to the effect that the express mention of one thing implies the exclusion of another; that § 6–05–34 does not mention § 6–07–04 and, therefore, we should have held that it was inapplicable to the respondent, which is organized and functioning under Chapter 6–05.

This contention would have merit if it were not for the provisions of § 6–05–28 which expressly renders § 6–07–04 applicable to the respondent, not only for the reasons set out in our opinion but for the further reasons:

■ (1) That § 6–01–09 provides in part that the State Examiner shall exercise constant supervision over the business affairs of all financial corporations and institutions placed within the jurisdiction of the State Banking Board. It is reasonably certain that the respondent is within the jurisdiction of the State Banking Board and that this section applies to it notwithstanding that it is not mentioned in § 6–05–34;

(2) It is equally certain that §§ 6–01–06, 6–07–05, and 6–07–06 likewise apply to the respondent even though they, too, are not expressly mentioned in § 6–05–34; and

(3) That § 6–05–28 expressly declares in part that the State Examiner shall assume and exercise "over each such corporation and its business . . . *all* the power and authority conferred upon him over banking and other financial or moneyed corporations or associations." [Emphasis supplied.] The word "all" has been defined to mean everything to which it applies. It does not mean some or a part, but means the whole or its entirety. Ulrich v. Amerada Petroleum Corporation, 66 N.W.2d 397 (N.D.1954). Manifestly, if we interpret § 6–05–28 in the light of this definition then it is reasonably certain that the authority to seize the property of a banking institution in the event of its insolvency under § 6–07–04 is one of the unquestionable powers which the State Examiner is required to assume and to exercise under the mandatory provisions of § 6–05–28.

These facts serve to confirm, rather than to impair, the validity of our decision on this issue and that under these circumstances the rule invoked and relied upon is of little value as an aid to statutory construction.

■ Fourth. The respondent vigorously insists again that we erred in sustaining the validity of the State Examiner's Order No. 1 because this conclusion, in effect, constitutes a determination that

the State Examiner has the power to arbitrarily determine that a banking institution is insolvent without any notice whatsoever and to seize its property without an opportunity to be heard on the issue of its insolvency.

It maintains that this determination is not only unreasonable and unsound but utterly inconsistent with our decision that only the State Banking Board had the authority to make such determination upon reasonable notice to and a fair hearing before it on the issue of insolvency. We disagree for three reasons. They are:

(1) That the State Examiner is not an officer in the sense that said word is defined and used in § 28–32–01 of the Administrative Agencies Practice Act for the reason set out in our opinion, and consequently the procedural requirements of said Act do not apply to the State Examiner when he is acting, as a conservator, in an individual capacity.

(2) We believe and find that there is a very substantial difference between the purpose and legal effect of a determination of insolvency made by the State Banking Board while acting as an administrative agency and an interim finding of insolvency made by the State Examiner when acting in an individual capacity pursuant to the provisions of § 6–07–04. These differences are:

(a) That the former requires the doors of a bank to be closed and its business to be discontinued, while the latter permits its doors to remain open and to continue its banking operations;

(b) That the former fixes and determines the rights and liabilities of all of the interested parties, while the latter is merely an intermediate finding to obtain possession and control for such period of time only as may be reasonably necessary for the State Banking Board to set up and hold a hearing on the issue of its insolvency;

(c) That the former is made for the purpose of appointing a receiver with the power to dissolve its existence, liquidate its business affairs and to distribute its assets, while the latter is only made for the purpose of preserving the status quo;

(d) That the former determination is final and binding upon all parties who had notice of or participated in the hearing before the State Banking Board unless it is modified or reversed upon timely appeal, while the latter is merely an interim finding subject to review before the State Banking Board and to judicial review thereof on appeal from its decision.

(3) We firmly believe that if § 6–07–04 were construed so as to require the State Examiner to hold a hearing on the issue of insolvency and to await the result of lengthy litigation before he has the right to seize the property of any banking institution, which he has found insolvent, that such interpretation, in the absence of a specific requirement to that effect would not only defeat the manifest legislative intent but would render said section wholly ineffective as a measure intended to protect the public and private interests in an emergency, which, as we have held, we have no power to do.

We are convinced that our interpretation of this section will not deny or deprive any banking institution of its constitutional right to due process of law, but on the contrary will fully safeguard and protect such right. That this interpretation of § 6–07–04 should set at rest once and for all the baseless and erroneous claims that, under our opinion, the State Examiner has the authority to arbitrarily find that a banking corporation is insolvent and to deliberately seize its property and to retain possession thereof for an indefinite period of time without the right of review before the State Banking Board and the right to a judicial review upon timely appeal from its decision.

Fifth. The respondent again insists that our interpretation and application of §§ 6–05–27 and –29 is unsound and erroneous. It claims that these are special statutes; that they are applicable to and govern the State Examiner's actions and, therefore, he must first exercise all of the powers and discharge all of the duties imposed upon him thereby before he can resort to or exercise the right to seize the property of any banking institution under § 6–07–04.

■ We disagree because this contention erroneously assumes that the courts have the power to control and to direct the manner in which discretionary powers vested in an administrative agency or official should be exercised.

We are convinced that we have no such authority for the reasons:

■ (1) That it is a well established rule of law which has been recognized and approved by this court that where the performance of a legal duty involves the exercise of judgment and discretion the exercise of such judgment and discretion cannot be controlled by mandamus nor can the courts direct the manner in which such discretion should be exercised; and

■ (2) That the courts have no power to substitute their opinions for the judgment of qualified experts in matters entrusted to administrative agencies or public officials. Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626; Mogaard v. City of Garrison, 47 N.D. 468, 182 N.W. 758 (1921); State ex rel. Herbrandson v. Vesperman, 52 N.D. 641, 204 N.W. 202 (1925); Transport Oil Inc. v. Cummings, 195 N.W.2d 649 (Wis.1972); 2 Am.Jur.2d, Administrative Law, § 464, p. 277 and § 672, p. 546.

There is a sound and practical reason for these rules and that is that the courts do not have or possess the expert knowledge, training, experience, or competency to substitute their opinions for the judgment of qualified experts made in the exercise of their discretionary powers vested in them by the legislative assembly.

Sixth. Counsel for respondent claims that this court had to resort to and did exercise the power to legislate to justify its opinion. He asserts in effect that although we conclude that the right of appeal is purely statutory and that we have no provision in law providing for an appeal from or a review of the State Examiner's intermediate ex parte orders that we proceeded to legislate in order to provide for both such right and remedy.

We think that this accusation is unfounded and unwarranted for the reasons:

(1) That § 6–01–04 expressly requires the State Banking Board to approve or disapprove the Examiner's reports which he is required to certify to it; and

(2) That this section, as we construe it, necessarily implies the power to review, and that the power to review of necessity implies that the State Examiner is an inferior officer whose administrative findings and intermediate orders are subject to review and approval by the State Banking Board, his superior administrative agency.

■ Stated in other words, § 6–07–04 must be construed together with § 6–01–04, and when so construed it necessarily implies:

(1) The right to review of the interim findings and intermediate orders of the State Examiner; and

(2) The right to a judicial review thereof upon appeal from its decision. 2 Am. Jur.2d, Administrative Law, § 541, p. 351.

Seventh and finally. The respondent has bitterly denounced our interpretation that § 6–07–04 is a special statute enacted for the purpose of protecting the public and private interest in an emergency. It

has challenged the propriety and wisdom of the legislative policy as we have interpreted it. It has again predicted the grave and tragic consequences that will ensue if we adhere to our decision sustaining the validity of the State Examiner's Order No. 1.

We believe that this attack is unreasonable and indefensible for the reason that the Supreme Court of the United States and this Court have consistently held, in effect:

(1) That the legislative assembly is necessarily vested with a broad discretion to determine not only what the interests of the public require, but also what measures are necessary for the protection of that interest; and

(2) That the courts have no power to question the necessity, wisdom or utility of legislation or to substitute its opinions on matters solely within the province of the legislative assembly. Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D.1967); Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.E.2d 93.

We believe that a proper respect for and a decent compliance with these basic principles of law require that an attack upon the wisdom of the legislative policy should be made before the legislative assembly, and should not and ought not to have been made before this tribunal. Fetzer v. Minot Park District, 138 N.W.2d 601 (N.D.1965).

It must be self-evident from the conclusions we have expressed herein that we are convinced that our opinion, as we have held, is sound, reasonable, consistent with the true legislative intent, and is sustained by ample authority. Therefore, we adhere thereto. Under these circumstances we firmly believe that a rehearing would serve no useful purpose and, therefore, the original and supplemental petitions for a rehearing are hereby denied.

TEIGEN and ERICKSTAD, JJ., concur.

STRUTZ, C. J., and PAULSON, J., deeming themselves disqualified, did not participate; EMIL A. GIESE and C. F. KELSCH, Judges of the Sixth Judicial District, sitting in their stead.

EMIL A. GIESE, District Judge, and KNUDSON, J., on the Order Denying the Petition for Rehearing indicated they would have granted a rehearing.